Wayne Edward ROBINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 54915.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 20, 1978.

Michael W. Hubbard, Iowa Park, court appointed on appeal, for appellant.

Timothy D. Eyssen, Dist. Atty., and Roger E. Towery, Asst. Dist. Atty., Wichita Falls, for the State.

Before ROBERTS, ODOM and TOM G. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for burglary of a habitation under V.T.C.A. Penal Code, Sec. 30.02(a)(1). After the jury returned a verdict of guilty, punishment was assessed by the court at fifteen years and one day.

In a single ground of error, the appellant challenges the sufficiency of the evidence to support his conviction. The State relied on circumstantial evidence for conviction and the court instructed the jury regarding the burden of proof in such cases. In light of appellant's contention, we review the evidence in detail.

Robert English, a Wichita County deputy sheriff, testified that on October 27, 1975, he investigated a reported burglary at the W. P. Mitchell residence on Lower Charlie Road in Wichita County. As a result of that investigation, he arrested George Nixon, Jr., William Robinson, and Wayne Edward Robinson, the appellant. The three were arrested five or six miles east of the scene of the burglary in Clay County at approximately 11:00 a. m. the same day.

Johnnie Mitchell testified that she and her husband owned a home on Lower Charlie Road in Wichita County. On the evening of October 26, 1975, between 10:00 and 11:00 p. m., she and her husband heard car doors open, followed by a knock on the door of their home. She heard a man at the door ask her husband for "James Robinson." They knew of no one in the community by that name. She noted that it took the man "a good little while to leave" after he returned to his car.

On the morning of October 27, 1975, at about ten minutes before eight, Mitchell planned to leave for classes at Midwestern University but discovered that she had "a low tire." She left her home and drove to her mother-in-law's. At her mother-in-law's, she checked the tire and added air. In order to get to school she retraced her route toward her home. As she approached the house, she noticed a car parked in the ditch in front of the house. The car was dark blue with a white top and it had a large dent on the driver's door. She also noted that the car had "a big antenna in the center of the trunk." She thought it was a Chevrolet or a Plymouth. She observed one black male sitting in the front seat "all scrunched down." She thought this man had on a "dark green looking color coat." She also observed another man approaching her house. She drove into the driveway and honked her horn several times. The man turned, started walking toward her and said, "Can I help you?" She answered, "Can I help you?" According to Mitchell, the man responded, "Can I help you ma'am? I've come to see James Robinson." Mitchell identified the man in her yard from a photograph as George Nixon, Jr. She also stated categorically that because of his voice, she was sure it was Nixon who had knocked on her door the night before asking for James Robinson.

After a brief discussion, Nixon got into the car and drove off very slowly. At this point she discovered that the front door of her home had been broken. She returned to her car, got in, and backed out, intending to follow Nixon's car. She stated that she was screaming, "Help, help," and honking her horn to try and attract attention. As she backed out of her driveway, she saw a third black male jump the fence surrounding her yard and drop into an irrigation ditch. According to Mitchell, the man "was running scrunched way down in the ditch where he thought maybe I couldn't see him but I seen him and I was honking my horn and yelling 'Help, help' and honking my horn." The man then came out of the irrigation ditch and onto the road. She testified that this man was wearing blue jeans and a light-colored shirt "with little pin stripes in it." She chased him down the road in her car hollering at him. According to the witness, as he ran he turned and told her, "Shut up, shut up." She apparently lost sight of the man on the road and returned to her mother-in-law's house, where she notified the authorities. She also testified that she found the back door of her home open and the house had been ransacked. A portable color TV and several other items appeared to have been stacked near the front door. She could not identify the appellant as either the man she saw running from her house or the man sitting in the front seat of the blue car.

Mrs. Beatrice Mitchell, Johnnie Mitchell's mother-in-law, testified that about 8:00 on the morning of October 27th, Johnnie Mitchell came to her house to get some air in a tire. She left and returned a few minutes later and told her mother-in-law of the break-in. They advised the authorities and Johnnie Mitchell departed to seek assistance from a neighbor. After her daughter-in-law departed, she got into her own car and drove to her daughter-in-law's home. As she approached her daughter-in-law's house on Lower Charlie Road, she sighted a car pulled off the road in front of her daughter-in-law's home. The car was dark blue with a white top and it had a large antenna on the back. She was able to note the last three numbers of the license plate as being "426." There was only one occupant in the car, a black male whom the witness could not identify. As she approached, the car sped off and passed her going in the opposite direction.

B. R. Harwell testified that shortly after 8:00 on October 27, 1975, he was at the ranch where he was employed as foreman approximately a quarter of a mile from the scene of the burglary. He observed a black man walking up the creek. The man told him he had car trouble at a nearby gravel pit and needed to get to town. The witness volunteered to give the man a ride to town with another employee named Davenport. The black man was identified from photographs as William Robinson.

Chester Lee Davenport, Jr., testified that he was employed on the G. T. Kimbell ranch in Wichita County on October 27, 1975. At the foreman's direction he gave a man identified from photographs as William Robinson a ride to town. He testified that Robinson was dressed in black work shoes and a pair of gray slacks. After Davenport and Robinson had gone a short distance down the road in the pickup, the two met a second black male walking down the road "almost in front of the other Mitchell house." Robinson asked Davenport to stop, saying that the man "was his partner or buddy." They stopped and picked up the second man. Prior testimony of Johnnie Mitchell reflected that her mother-in-law, Mrs. Beatrice Mitchell, lived "just less than a mile from our house." The man they picked up was positively identified as the appellant. Davenport dropped the two off in Wichita Falls.

Officer English was recalled, and testified as to the forcible entry into the Mitchell home. He also testified that in the course of his investigation he discovered a footprint in a freshly plowed garden near the rear of the Mitchell home. A check of the partial license number with the description of the car used by the burglars revealed that such a car was owned by George Nixon, Jr. After a conversation with Harwell, English sought to see if he

could discover a disabled car near a gravel pit such as William Robinson had described to Harwell. As a result of the investigation, a car was discovered several miles away in Clay County adjacent to a gravel pit. There was evidence to tie the ownership of this car to George Nixon, Jr. A stake-out was established on the car in Clay County and later that morning George Nixon, Jr., William Robinson and the appellant were arrested when they attempted to come and remove the disabled vehicle. After his arrest, it was determined that the footprint found in the rear of the Mitchell home matched the pattern of the shoe worn by William Robinson at the time of his arrest.

Opal Adams testified that on Saturday, October 25, 1975, she lived in a house trailer on Lower Charlie Road in Wichita County. On that day her husband was hospitalized and shared a hospital room with a black male named Terry King. King had a number of visitors, one of whom the witness was positive was the appellant. She thought but was not sure that George Nixon and William Robinson also visited King in the hospital on that day. The next day, Sunday, October 26, at about twenty minutes until ten in the evening, she heard someone "beat on the side of my trailer." She turned on an outside light and she saw a man she identified as appellant. He asked for the man of the house, saying he had car trouble down the road. She refused to help and turned out the light. She became frightened and called a neighbor. On cross-examination, she identified William Robinson from his photograph rather than the appellant as the man who came to her trailer on the night of October 26th.

William Robinson testified that he was the brother of the appellant.

The appellant testified in his own behalf that on the morning of October 27, 1975, George Nixon drove him to work at Allison Van and Storage after picking up his brother, William Robinson. They were early, so they stopped for coffee. They discovered that it was apparently a holiday and "no one was going to show up for work." Appellant's brother explained to him that he

had been using his father's car the night before and it had stopped somewhere out in the country on Lower Charlie Road. The three drove to a gravel pit, where the car was located. According to the appellant, when they arrived on the scene, Nixon realized he didn't have enough gas to pull the car back, so they let the appellant off and went looking for gas. According to the appellant, this was at approximately 8:30. Appellant then remembered that prior to arriving at the car they had dropped off William in the country so he could get a chain to pull the car. After 35 or 40 minutes waiting for his brother or Nixon to return, he started hiking back to town and was picked up by Davenport and his brother. Davenport dropped them off in town, where they eventually rendezvoused with Nixon and returned to the disabled car at the gravel pit. When they approached the car at the gravel pit, they were arrested. The appellant adamantly denied any connection with the burglary of the Mitchell residence.

■ The test for determining the sufficiency of the evidence to uphold a conviction in a circumstantial evidence case was stated in *Indo v. State*, Tex.Cr.App., 502 S.W.2d 166, as follows:

"This court has long adhered to the rule that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or merely probability is not sufficient. *Flores v. State*, 489 S.W.2d 901, 902 (Tex.Cr.App.1973), and cases therein cited."

■ It is not necessary, however, that every fact point directly and independently to the guilt of the accused, and the cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Easley v. State*, Tex.Cr.App., 564 S.W.2d 742; *Flores v. State*, Tex.Cr.App., 551 S.W.2d 364.

■ Every circumstantial evidence case must necessarily be tested by its own facts

to determine the sufficiency of the evidence to support the conviction. *Stogsdill v. State,* Tex.Cr.App., 552 S.W.2d 481; *Moore v. State,* Tex.Cr.App., 532 S.W.2d 333.

By way of summation, the incriminating facts show that three black males were at the scene of the burglary around 8:00 a. m. on the day in question. Appellant was identified by the witness Davenport as being at a location less than a mile from the burglarized house that morning. Appellant was arrested in the company of George Nixon, Jr. and William Robinson about 11:00 a. m. the same morning. Nixon was identified as one of the three persons at the scene of the crime. William Robinson's footprint matched a print found at the Mitchell residence.

 Presence in the vicinity of a crime is not sufficient to sustain a conviction. *Ysasaga v. State,* 444 S.W.2d 305. We find that this factor, along with all of the other circumstances in this cause, amounts to nothing more than strong suspicion or a probability that appellant committed the crime charged. We conclude that the evidence does not exclude all other reasonable hypotheses except appellant's guilt and find the evidence is insufficient to support the conviction.

In *Burks v. United States,* —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1, the United States Supreme Court by opinion of June 14, 1978, held that the "Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient . . .." In *Greene v. Massey,* —— U.S. ——, 98 S.Ct. 2151, 57 L.Ed.2d 15, handed down the same day as the *Burks* decision, the Supreme Court held, "Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton v. Maryland* [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)], we are bound to apply the standard announced in *Burks* to the case now under review."

 Having found that reversal must result in the instant case since we concluded that the evidence is insufficient to support the conviction, the Supreme Court's decisions in *Burks v. United States,* supra, and *Greene v. Massey,* supra, dictate that no further prosecution be had in this cause.

The judgment of conviction is set aside and is reformed to show an acquittal.