**Marie TONEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56710.**

Court of Criminal Appeals of Texas, Panel No. 3.

July 18, 1979.

Rehearing Denied Oct. 10, 1979.

John T. Montford, on appeal only, Lubbock, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, CLINTON and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

Following appellant's conviction for burglary, the trial court assessed punishment at eight years confinement. On appeal three grounds of error are presented including a challenge to the sufficiency of the evidence. We affirm.

The record reflects that on May 8, 1975, approximately $3,000 worth of merchandise was taken in the burglary of the Amherst Variety and Department Store in Amherst, Texas.[1] Investigation at the scene produced a bundle of clothing wrapped in a bedspread in the alley behind the store. Officers also testified that footprints found in the alley appeared to have been made by a female.

Evidence adduced by the State established that appellant and a companion (Deborah Davis) were in the store on May 7th in the late afternoon. At closing time, appellant and her friend were asked to leave by the owner who proceeded to lock the building. No one had permission to enter the store.

The record reflects that there were no witnesses to the break-in and burglary of the store. However, at about 5:30 a. m. on May 8th, the occupant of the residence behind the store was awakened by loud noises and arose in time to see a "light top" convertible with the trunk lid open drive down the alley. Appellant and Davis traveled to Amherst from Lubbock in a green Oldsmobile convertible having a light-colored top.

The owner of the adjoining business discovered the burglary on May 8th. The ensuing police investigation focused on appellant, Deborah Davis, and appellant's niece, Gracie Wilson, who lived in Amherst.

Sheriff E. D. McNeese went to the home of Gracie Wilson in Amherst; however, appellant was not there. Sheriff McNeese spoke briefly with Wilson, then went next door to an adjacent vacant house. Returning shortly, the Sheriff found some clothing lying at the edge of the yard of the vacant house. This clothing was later identified by the store owner as part of the merchandise removed during the burglary.

On May 20th, Sheriff McNeese spoke with appellant at the Lubbock County jail where she was in custody for probation revocation. In the course of the conversation, Sheriff McNeese noted that appellant was wearing clothing resembling that taken in the Amherst burglary. This clothing, confiscated in a later raid on an apartment in Lubbock, was identified by the store owner as merchandise taken during the burglary.

In mid-August 1975, the Lubbock Police Department executed a search warrant on an apartment leased by appellant and Davis. The warrant specified clothing articles taken in a burglary in Henderson, Texas. One of the officers, Texas Ranger Jackie Peoples, was aware of the Amherst burglary. In the course of this search, Ranger Peoples seized or directed the seizure of several articles of clothing resembling those taken in the Amherst burglary. This clothing was taken to the police department in Lubbock where it was later identified as property taken in the Amherst burglary.

The identification of all the clothing articles by the store owner was by color, type, style and brand name based on personal familiarity with the merchandise in the store. Appellant argues such an identifica-

---

1. The majority of this merchandise consisted of men's and women's clothing. Some bed linens were also taken.

tion based on "quality" discredits the testimony and destroys any link between appellant and the burglary. It is for the jury to determine the credibility of testimony and to determine the weight to be given such testimony. On appeal, our task is to review the evidence in the light most favorable to the verdict of the jury. We are therefore bound to accept the jury's expressed belief that the clothing identified was in fact merchandise removed from the Amherst store. Further, we hold the evidence, albeit circumstantial, is sufficient to sustain appellant's burglary conviction. *Robinson v. State*, 570 S.W.2d 906 (Tex.Cr.App.1978). Appellant was shown to have been in personal possession of clothing taken from the Amherst store on May 20th, twelve days after the burglary. Such recent possession, unexplained by the record, provides sufficient evidence to sustain appellant's conviction. *McKnight v. State*, 399 S.W.2d 552 (Tex.Cr.App.1966).

In her second ground of error, appellant complains that the trial court erred in permitting the State to examine the jury panel on punishment during voir dire. Appellant supports this ground by pointing to the fact that she had not yet elected to go to the jury for punishment. Further, appellant argues that by not making a timely election to go to the jury for punishment, she has elected to go to the judge.

■ Appellant argues correctly that where no election is filed, the trial court has the duty to assess punishment. *Bullard v. State*, 548 S.W.2d 13 (Tex.Cr.App.1977). Article 37.07, Sec. 2(b), Vernon's Ann.C.C.P. provides:

> ". . . Except as provided in Article 37.071, if a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, . . . (2) in other cases where the defendant so elects in writing at the time he enters his plea in open court, the punishment shall be assessed by the same jury."

Under the language of Art. 37.07, Sec. 2(b), Vernon's Ann.C.C.P., failure to make an election in writing to have the jury assess punishment is not an election to have the judge assess punishment. Rather, the failure of appellant to file an election merely means that by operation of the Code of Criminal Procedure, the court must assess punishment. Until the time has passed to make this election, the trial judge cannot know whether the jury or the bench will assess punishment. Our task, therefore, is to determine when an election must be filed, then determine if that time had passed.

■ The election must be made at the time the defendant enters his plea in open court. This has been interpreted to mean at the time the defendant makes his plea to the indictment before the jury. See *Donald v. Jones*, 445 F.2d 601 (5th Cir. 1971). In appellant's case, the alleged error occurred during voir dire of the jury panel, clearly well before any plea to the indictment by appellant. Therefore, appellant still had the election available and could choose to exercise it. Under such circumstances, appellant cannot complain that the State examined the jury panel on punishment. The trial court properly overruled appellant's objection.

In her final ground of error, appellant argues that the admission, over objection, of the search warrant, supporting affidavit, and officer's return constituted prejudicial evidence of an extraneous offense. These documents referred to clothing taken during a burglary in Henderson, Texas, and as appellant points out, the evidence never showed that appellant perpetrated the Henderson burglary.

Appellant's contention on this ground comes within our decision in *Ward v. State*, 581 S.W.2d 164 (1979), and cases cited therein. Therefore, appellant's third ground of error is overruled.

The judgment is affirmed.

CLINTON, Judge, dissenting.

Appeal follows conviction for burglary of a building. Punishment was assessed at eight years. One issue upon which this case is decided is the sufficiency of the evidence

to sustain the conviction. I therefore set out the evidence presented at trial by the State in its summarized entirety.

The first witness was Mrs. Raymond Humphreys, the owner of a dry goods store in Amherst at which various types of clothing were sold. She testified that around 5:00 p. m. on the evening of May 7, 1975, three females entered and looked at clothing for about an hour. She identified one of the women as Gracie Wilson and another as appellant. At 6:00 p. m. Humphreys asked the women to leave because she was closing. The next morning, May 8, 1975, she discovered that a glass door at her store was broken and approximately $3,000.00 worth of merchandise, mostly clothing, had been taken. Humphreys stated that she was "familiar" with her merchandise, but that there was no particular marking on each garment to identify it as having come from her store. She admitted that the clothes she sold were available through other retailers nationally. She stated, however, that it would be unlikely that anyone would possess clothing of all the types and brands that she sold.

After discovering the burglary, Humphreys called the sheriff who came that day to investigate. The sheriff left after a brief visit, but he returned later that day with several garments. Humphreys told him that she recognized only one of the items as the type sold at her store. About three months later, in August of 1975, Humphreys went to the Lubbock police station where she identified a group of clothing as having been taken in the burglary. She based her identification on knowledge of "the sizes, and colors and the kinds" of clothing sold at her place of business.

The second witness was Tressie Carpenter, who lived next door to the burglarized store. She heard a noise that attracted her attention around 5:30 a. m. on May 8, 1975. She saw a car driving down the alley by her house. She could not identify the passengers, nor could she say where the car had come from or where it went. Her testimony as to the observation of the car was as follows:

"Q: Can you describe that car for me?

A: Well, I didn't pay much attention, but I got the impression that it was a light top convertible.

Q: What, if anything, was peculiar about it when you saw it?

A: Well, it had the turtle—the turtle wasn't closed. It was going up and down.[1]

Q: And could you see if there was anyone in the vehicle?

A: No, I couldn't see that."

The third witness was Earl Rankin, a detective with the Lubbock Police Department. In August of 1975 he received information that there were stolen clothes from a different burglary in Henderson, at an apartment rented by appellant in Lubbock. Rankin obtained a search warrant, and he went to appellant's apartment with two other officers. They observed an unidentified man leaving the apartment wearing a coat that appeared to have come from the Henderson burglary. The officers approached the apartment and knocked on the door. When no one answered, they forced open the door. They found a woman downstairs named Deborah Davis. Gracie Wilson was in the upstairs north bedroom, and appellant was found in the upstairs south bedroom. The officers seized clothing found in the apartment and in a storage area on the apartment patio. That clothing was identified by Mrs. Humphreys as having been taken from her store.

The next witness was Jackie Peoples, a Texas Ranger stationed in Lubbock. He assisted the sheriff in investigating the burglary of the store owned by Mrs. Humphreys, and was present during the search of appellant's apartment. He found some quilts, which were later identified by Mrs. Humphreys, in the north bedroom where Gracie Wilson was staying; but could not

---

1. The witness provided no explanation of what a "turtle" is, but presumably she was referring to the trunk lid of the car.

"specifically" remember any of the items being found in the south bedroom where appellant was arrested.

Peoples further testified that one of the items of clothing taken from the apartment had been worn by appellant in the "latter part" of May. Appellant had surrendered herself to the sheriff of Lubbock on a probation revocation warrant, and Peoples observed appellant wearing the garment. He did not take the clothing into custody at that time, however, and it was later found among the other clothes in the apartment.

The next witness was Doyle Nelson, a Lubbock City Policeman, who also participated in the search of appellant's apartment. He testified that a green Oldsmobile convertible with a light colored top was found at the apartment. Nelson further stated that he had seen appellant riding as a passenger in the car on past occasions, but he had never seen her drive it.

The next witness was Charles Campbell. He worked as the executive manager for Jason Enterprises renting apartments in Lubbock, Texas. He testified that appellant came to his office with Deborah Davis, and appellant signed an application to lease an apartment. The apartment was then leased to appellant and Davis jointly.

The final State witness was E. D. McNeese, sheriff of Lamb County. He verified that he investigated the burglary that occurred at the Amherst clothing store. He observed outside some footprints which he determined were "made by a female." He made that determination based on the size of the feet and type of soles on the shoes. He discussed the visit to appellant around May 20, 1975, with Ranger Peoples. McNeese verified that appellant was wearing clothing items identified as having been taken in the burglary.

The general rule is that in reviewing the sufficiency of the evidence on appeal, it will be viewed in the light most favorable to the jury verdict. Bowers v. State, 570 S.W.2d 929 (Tex.Cr.App.1978). When the conviction is based on circumstantial evidence, as in appellant's case, the evidence is insufficient if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. Stogsdill v. State, 552 S.W.2d 481 (Tex.Cr.App.1977). As we stated recently in Sewell v. State, 578 S.W.2d 131, 135 (Tex.Cr.App.1979):

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged." [Quoting from Culmore v. State, 447 S.W.2d 915 (Tex.Cr.App.1969).]

A careful review of the State's evidence outlined above convinces me that it is insufficient to sustain appellant's conviction. Appellant was not identified by anyone as having been present at the burglary. The neighbor, Tressie Carpenter, did not see the burglary or anyone who was riding in the automobile she observed. Carpenter could only very cautiously say that the car was a convertible, and the evidence showed only a tenuous connection between appellant and an Oldsmobile convertible. The footprints found at the store were characterized as being "female" in origin. Even if this suspect hypothesis is accepted, the footprint was not matched to appellant, and numerous females could have made the print.

The only other link of appellant to the store is that she visited it the evening before. Presence at the scene of a burglary has some probative value, but the limitation on the degree of its probativeness is demonstrated by the rule that presence alone will not sustain a conviction. Robinson v. State, 570 S.W.2d 906 (Tex.Cr.App.1978); Vela v. State, 491 S.W.2d 435 (Tex.Cr.App.1973). The further the time from the commission of the offense, the less probative value presence at the scene will have. In this instance, being at the store the evening before is of slight probative value.

Although there was no State's brief filed in this case, the majority relies on the theory of an inference of guilt arising from possession of recently stolen goods. For that exception to apply, the possession must be: (1) personal; (2) recent; (3) unexplained; and (4) a distinct and conscious assertion of property by the defendant. *McKnight v. State*, 399 S.W.2d 552 (Tex.Cr. App.1966). The clothes found in the apartment jointly leased by appellant fail on at least two of the above grounds. First, the clothes were not found until more than three months after the burglary. Second, the apartment was not under appellant's exclusive and personal control, and the evidence failed to show that any clothes were found in the room occupied by appellant. Such evidence is insufficient to raise the inference of guilt. *McKnight v. State*, supra, at 555.

Finally, the fact that Ranger Peoples and Sheriff McNeese observed appellant wearing merchandise identified as taken in the burglary is not enough to salvage the State's case. The viewing occurred around two weeks after the burglary. The facts are very similar to the case of *Beathard v. State*, 126 Tex.Cr.R. 2, 70 S.W.2d 151 (1934), in which the defendant was accused of burglary of a home in which clothes were taken. A witness testified that the defendant and his brother brought some of the stolen goods to that witness' house the same month that the burglary occurred. This Court concluded that the possession at that time did not exclude the reasonable hypothesis that others may have committed the offense, and that the defendant may have gained possession in some other manner. In *Beathard*, as in this case, there was evidence that raised other reasonable hypotheses as to how the burglary may have been committed. In this case, any of the other persons at the apartment could have committed the offense without any involvement by appellant.

2. Citing only a decision by the Fifth Circuit the majority also errs in finding that an election by an accused that the jury assess punishment "at the time he enters his plea in open court" means when he responds to a reading of the indictment in presence of a jury that has al-

For these reasons the judgment must be reversed and the cause ordered dismissed. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Because it is not, I dissent.[2]

ready been selected and impanelled. Since at arraignment an accused personally "enters his plea in open court" the statute should be read to refer to *that* occasion to effect judicial economy and to obtain jurors whose views on punishment are immaterial to their task.