Larry Don SPENCER, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–256–CR.
(2269cr).

Court of Appeals of Texas,
Corpus Christi.

Feb. 4, 1982.

Discretionary Review Refused
May 19, 1982.

James F. Hury, Jr., Dist. Atty., Galveston, for appellee.

Before BISSETT, YOUNG and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a conviction for aggravated robbery. Following a jury trial, punishment was assessed at twenty years confinement in the Texas Department of Correction.

The conviction is based solely on circumstantial evidence. The trial court charged the jury on circumstantial evidence. The defendant did not testify, nor did he present any evidence. The single ground of error is that the evidence is insufficient to sustain the conviction.

At approximately 10:30 p. m. on May 22, 1979, Juan Antonio Menchaca returned to his home at 514 12th Street South, Texas City, Texas, from a local convenience store carrying two bags of groceries. As he prepared to enter the front door of his home, he was attacked from behind, pushed off the front porch, thrown to the ground, and a pistol was "put" to his head. The assailant straddled him, took his wallet from him, fired a shot that hit no one, and then fled the scene of the attack on foot.

It was dark when Menchaca was robbed. The porch light "was turned off that night." There were no lights on in any of the "other houses around there." The location of the nearest street light was not established.

Menchaca, the victim of the robbery, testified when the pistol was put to his head, he made an attempt to look towards the right, and "saw a black hand and a chrome pistol." When Menchaca attempted to look at his assailant's face, the latter "hit me in the face." When Menchaca was asked on direct examination what was taken from him by "the man," he said:

"My wallet. That's all."

In response to the question "What was in your wallet?" he stated:

William M. Hicks, Dickinson, for appellant.

"Less than ten dollars, and (his) immigration papers."

Following the attack and robbery, Menchaca remained "face down" on the ground for a very short time, got up, and saw his attacker "running" along the street. He said that "the man" was about "half-a-block" away, was dressed in "dark clothes," and had a "dark" object in his hands. Menchaca could not identify the object.

Shortly after the incident, Menchaca, at the request of the police, went to the police station where the police "showed him a man." At the trial, Menchaca was asked: "And was that man this defendant?" He replied:

"He is the same height, same weight, and similar. He is the same color."

The record also contains the following questions propounded to Menchaca and his answers thereto:

"Q. Do you know this defendant here today, Mr. Larry Don Spencer?

A. Yes, because I had seen him at the police station.

Q. This was after the robbery. Is that correct?

A. Yes, after the robbery, but at the police station.

Q. Had you ever seen him before that time?

A. No."

* * * * * *

"Q. You cannot say definitely that this is the man who attacked you?

A. No."

* * * * * *

"Q. Was any of your property returned to you later?

A. Just the papers, but not the money.

Q. Was your wallet returned to you?

A. No."

A pistol was exhibited to Menchaca at the police station. That pistol was introduced in evidence at the trial. Menchaca was asked at the trial, "Did the gun look like the gun put to your head?" He replied that the only thing "he could identify was the chrome," but that he did not know "if that was the exact gun."

About three blocks from the scene of the robbery, and at about the same time of the robbery, Mr. Stanley L. Wade, a police officer who was on routine automobile patrol, saw the defendant, "with the beams of my headlights on bright," run from between two houses. The officer testified that the defendant, who was carrying his shirt, appeared to "dip and roll out his shirt" (or lay it on the ground) after spotting the police car. He did not see anything "fall" out of the shirt. The defendant then picked up his shirt, put it on, and walked toward the police car, which was parked about fifty or sixty feet away. The officer and defendant stepped around to the rear of the car where the officer asked the defendant his name, where he was going, and where he was coming from. During this questioning, the defendant tried to hide his hands, which had a white substance on them. The officer identified the substance as "paint, dry paint that you get from a house after it has been dried." He also noticed the same substance on the defendant's pants. At that time, another police unit came up, and Officer Wade "went over and checked the two houses he (the defendant) had come between to make sure there was no point of entry." He found nothing.

The defendant then accused the officers of harassing him. He became "obnoxious" and was subsequently arrested by Officer Wade for disorderly conduct.

While transporting the defendant to the police station, Officer Wade learned over the radio that a robbery had just occurred in the general vicinity of the arrest. He took Spencer to the police station for booking. He then returned to the scene of the arrest where he found, at the spot where defendant had "dropped" his shirt, a chrome-plated pistol, and "some papers."

Officer Wade examined the pistol. It "had one spent round under the hammer," which indicated that "it had been fired." Concerning the "papers," which were found at the site where the pistol was discovered, Officer Wade said that he kept them in his

custody "until they went through the Xerox, and then these copies were placed in the evidence locker." The originals were delivered to Menchaca. In response to a suggestion by counsel for the State that he tell the jury what type of papers he "found at the location where the gun was found," Officer Wade stated:

"The papers that I picked up, there was a letter from the Crystal City Police Department stating something about residency . . . there were also three or four payroll deductions, or tabs on there from Grumman Allied, pay slips . . . there was a card with fingerprints on it—or thumbprints on it. There was also this notice of entry. There were a couple of other sheets. I don't recall what they were . . . there was a hospital identification card, and just a paper identification card, all with Juan Menchaca's name on them."

The originals of: 1) Three payroll deduction slips from Grumman Allied Industries, Inc.; 2) a hospital identification card, issued to one "Juan Menchaca" and signed by one "Juan Menchaca"; and 3) a United States Identification Card, dated April 3, 1979, issued to one Juan Antonio Menchaca, of 729 Avenue 14, Texas City, Texas, and signed by one "Juan Antonio Menchaca," were introduced into evidence without objection. Xerox copies were then substituted for such originals, and the originals were "returned" to Menchaca. The other "papers" which Officer Wade "found" were not introduced into evidence. Menchaca was not asked anything about the "papers" which Officer Wade "found," although he was called as a witness by the State and did testify.

The payroll deduction slips do not bear the name of Menchaca, despite the arresting officer's testimony that "all these papers were—had Mr. Menchaca's name on them." Neither the wallet nor the money therein contained were ever found or recovered. No paper currency (only change) was found on defendant when he was arrested.

The pistol was tested for prints, but only smudges were found; so, there is no evidence that the defendant ever touched the gun. The white substance found on de-

fendant's hands and pants was never chemically tested, though the arresting officer did say that the white paint on Menchaca's house, along with other houses in the area, was "chalky and would rub off."

The test for reviewing circumstantial evidence cases on appeal is whether there was evidence from which the jurors, having been advised of the restrictions the law places upon them in condemning one upon circumstantial evidence, might reasonably conclude that every reasonable hypothesis other than the defendant's guilt was excluded. *Flores v. State*, 551 S.W.2d 364 (Tex.Cr.App.1977). In circumstantial evidence cases, the appellate court will view the evidence in the light of the presumption that the accused is innocent. *Flores v. State*, supra. All available avenues or areas which are likely to reveal the truth should be explored. *McKinley v. State*, 282 S.W. 600 (Tex.Cr.App.1926). "Proof amounting to only a strong suspicion or merely probability is not sufficient." *Robinson v. State*, 570 S.W.2d 906 (Tex.Cr.App. 1978). To warrant a conviction on circumstantial evidence, there must be proof to a degree of certainty greater than probability or a strong suspicion tending to establish that the defendant was the person who committed the crime, or was a participant therein; there must be direct evidence which establishes the basic facts beyond a reasonable doubt. *Fraser v. State*, 141 Tex. Cr.R. 152, 147 S.W.2d 780 (1941). Every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Stogsdill v. State*, 552 S.W.2d 481 (Tex.Cr.App.1977).

Mere presence in the vicinity of the crime, even when coupled with flight, is not alone sufficient to sustain a conviction. *Moore v. State*, 532 S.W.2d 333 (Tex.Crim. App.1976).

This Court has a duty of insuring that no one is convicted of a crime except upon proof beyond a reasonable doubt, and in a circumstantial evidence case, upon proof excluding all other reasonable hy-

potheses except defendant's guilt. *Bryant v. State*, 574 S.W.2d 109 (Tex.Cr.App.1978). *Easley v. State*, 529 S.W.2d 522 (Tex.Cr. App.1975).

■ The question for this Court to decide is whether the defendant's presence in the general vicinity of the robbery at that particular time, combined with the recovery of the pistol, the aforesaid check stubs, the hospital card and the identification card is sufficient to link the defendant with the robbery. We answer that question in the negative.

In summary, the items found by Officer Wade in the area where he first saw the defendant were never linked to defendant. The site was about three blocks away from the place where the robbery occurred, which places those items in the general vicinity of the place where the robbery was committed, not, however, in the immediate vicinity thereof. Menchaca was never queried (at the trial) with reference to the "papers." Specifically, he was not asked 1) if any of the "papers" found by Officer Wade belonged to him; 2) if those papers were in his wallet at the time the robber took the wallet from him; or 3) if the signatures on the hospital card or on the identification card were his signatures. The "papers" were not shown to him at the trial. The identification card shows that it was issued by a person whose initials are "R. E."; it has a picture of a person on the front and fingerprints of the left and right index fingers on the back. Menchaca testified that he lived at "514 12th Street South, Texas City," while the identification card recites a residence address of "729 Avenue 14, Texas City." The identification card was issued on April 3, 1979, and the robbery took place on May 22, 1979, some seven weeks later. There is no evidence that Menchaca ever lived at 729 Avenue 14, Texas City.

The pistol and the "papers" were not discovered when Officer Wade first inspected the area where the defendant dropped his shirt. They were discovered "between 21 and 27 minutes" after he first saw the defendant, when he went back to the scene

of the arrest and made another search of the area.

The pistol was not positively identified as being the same weapon used in committing the robbery, even though they were "alike." Menchaca was unable to identify the defendant as his assailant. There is no evidence that Menchaca's attacker came in contact with any part of the outside of Menchaca's house before, during or after the robbery. The white paint on the defendant's hands and pants, if it was white paint and if it got on his hands and pants as a result of coming in contact with the outside of a house, could have come from any one of a number of houses in the vicinity of the robbery.

There is no evidence that the defendant was ever in possession of the wallet or of the money or the "immigration papers" contained in the wallet. There is no evidence which shows that the identification card was issued by the U. S. immigration authorities. There is no evidence which will support an inference that any of the "papers" found by Officer Wade are the same papers which Menchaca said were his "immigration papers."

There is no evidence that Menchaca was ever employed by Grumman Allied Industries, Inc., or that the payroll slips found by Officer Wade belonged to Menchaca. There is no evidence that the signatures on the hospital card and the identification card were the signatures of Menchaca.

The cases of *Washington v. State*, 518 S.W.2d 240 (Tex.Cr.App.1975), *Bonner v. State*, 492 S.W.2d 498 (Tex.Cr.App.1973), *Batiste v. State*, 464 S.W.2d 149 (Tex.Cr. App.1971), and *Edmonds v. State*, 407 S.W.2d 783 (Tex.Cr.App.1966), not being in point, do not control the disposition of this case. They are all distinguishable on the facts from those presented in this appeal. The proof in all of those cases conclusively showed that the defendant was in *unquestioned* "unexplained possession" of the very property which was taken from the victim at the time of his arrest, which occurred shortly after the theft or robbery took place, as the case may be. That is not the

case here. The element of "unexplained possession" by the defendant of property taken from Menchaca during the robbery is lacking. We are not concerned with mere possibilities or probabilities in this appeal; we are concerned with evidence and inferences which may be lawfully drawn from evidence. We find nothing in this record which establishes by evidence, or proper inference, that the defendant, at any time, was in "unexplained possession" of Menchaca's wallet, any money contained therein, or the "immigration papers."

This case is controlled by the rule announced in *King v. State*, 396 S.W.2d 409 (Tex.Cr.App.1965), and followed in *Schershel v. State*, 575 S.W.2d 548 (Tex.Crim. App.1979). The Court, in *Schershel*, at page 551, said:

> "Where circumstantial evidence relied on by the prosecution is obviously weak and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. *King v. State*, Tex.Cr.App., 396 S.W.2d 409; 24 Tex.Jur.2d 427, Evidence, Section 745."

That rule is especially significant and applicable in the case at bar. Additional testimony could have been elicited from Menchaca which could have shed light on the "papers." As already stated, Menchaca testified for the State. He could have been asked if the "papers," or any of them, were in his wallet at the time of the robbery, or taken from his person by the robber. He was not asked any question which would have cleared up the matter and might have proved unquestioned unexplained possession of the "papers" by the defendant. There is

nothing in the record which satisfactorily accounts for the State's failure to ask Menchaca the obvious questions. We, therefore, must treat this case as one which shows reasonable doubt with respect to the sufficiency of the evidence to support the conviction.

In order to sustain the conviction in this case, we would be compelled to pile an inference upon an inference. This, we cannot do. *Williamson v. State*, 156 Tex.Cr.R. 520, 244 S.W.2d 202 (1952).

The evidence does not exclude the reasonable hypothesis that the defendant's proximity to the scene of the crime was mere coincidence. The evidence does not exclude all other reasonable hypotheses except defendant's guilt. The evidence presented by the State amounts to nothing more than a strong suspicion or probability that the defendant committed the crime for which he was convicted. We hold that the evidence is insufficient to sustain the conviction in this case. The defendant's ground of error is sustained.

█ No further prosecution is permissible. *Burks v. U. S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Robinson v. State*, 570 S.W.2d 906 (Tex.Crim.App.1978).

The judgment of the trial court is REVERSED and REFORMED to reflect an acquittal.

GONZALEZ, Justice, dissenting.

I respectfully dissent. In my judgment, the evidence is sufficient to sustain the conviction.

Appellant was convicted by a jury for the offense of aggravated robbery. The jury assessed punishment at twenty (20) years in the Texas Department of Corrections.

On May 22, 1979, at approximately 10:30 p. m., Juan Menchaca[1] returned to his home

---

1. Menchaca is a person of Mexican descent who testified through an interpreter. A person employed in the County Tax Office was used as the interpreter. The record does not disclose if this was the usual practice in this County or whether this person was filling in for the regular interpreter. It is obvious from reading the Statement of Facts, that this person is not a qualified interpreter. However, no error is

from a local convenience store carrying two bags of groceries. As he prepared to enter the front door of his home, he was approached from behind by a man who put a pistol to his head and was pushed off his porch. Once on the ground, his assailant straddled him, stole his wallet, fired a shot that apparently struck no one, and fled on foot.

Menchaca testified that he saw a "black hand and a chrome pistol"; that he was hit on the face when he attempted to look at his assailant's face, and that in his wallet he had less than $10.00 and his "immigration papers."

Menchaca chased his attacker a short distance, and noticed that his attacker was taller than he, and that the attacker was wearing dark clothes. Menchaca immediately reported the incident through his landlord, and the police were called. Shortly thereafter, a police officer on routine patrol in the area in question, observed appellant run between two houses about three and a half blocks from the scene of the robbery. Appellant was looking in different directions as he ran and was carrying what appeared to be his shirt in his hand. When appellant saw the officer, he bent down to the ground and dropped his shirt. He then picked up his shirt, turned around and started putting his shirt on and walked toward the officer's unit away from the area where he stooped down. While being questioned, appellant became very nervous and appeared to be trying to draw the officer's attention away from his hands. The officer inspected appellant's hands and found a dry, chalky, white paint substance on them and also on appellant's slacks. Unaware that Menchaca had been assaulted, the officer arrested appellant for disorderly conduct after appellant started yelling ob-

scenities at the officer. At the time the officer reached the police station with appellant, a call came over the radio that a robbery had occurred in the general vicinity where appellant was arrested. The officer booked appellant for disorderly conduct, and returned to the spot where appellant had bent to the ground.

At that location the officer found a chrome-plated .22 caliber pistol with one spent cartridge under the hammer, and numerous identification papers bearing the name of Juan Menchaca.

The papers were a hospital identification card, issued by an insurance company under the name of "Juan Menchaca", and a United States of America identification card.[2]

The officer went to Menchaca's home and found the exterior painted walls to have a white, chalky finish that would rub off on a person if one brushed up against it.

Menchaca could not identify his assailant, but testified that appellant was of the same weight, height and color as the assailant. The State rested its case and the appellant offered no evidence. As is obvious, the conviction was based solely on circumstantial evidence.

The test for reviewing circumstantial evidence cases on appeal is whether there was evidence from which the jurors, having been advised of the restrictions the law places upon them in condemning one upon circumstantial evidence, *might reasonably conclude* that every reasonable hypothesis, other than the defendant's guilt, was excluded. *Moore v. State*, 523 S.W.2d 333 (Tex.Cr.App.1976). Every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Stogsdill v. State*, 552 S.W.2d 481 (Tex.Cr. App.1977).

raised challenging the adequacy of the interpreter.

2. This I.D. card has "United States of America" in bold type Old English print; "Identification Card," in small type, is printed underneath. On the right is Menchaca's passport-type photograph. On the left it has his name, address, sex, height, date of birth, color of eyes and hair; card number, date issued and Menchaca's sig-

nature. On the reverse side, it has date card was issued, date it expires, issued by initials "R.E.," and his left and right index fingerprints. It certainly looks official. Menchaca, the investigating officers, attorneys and jury obviously thought it was an "immigration paper." The fact that it is NOT a card issued by the United States Government is irrelevant, and appellant makes no issue of this fact on appeal.

"In circumstantial evidence cases it is not necessary, however, that every fact point directly and independently to the defendant's guilt. It is enough if the conclusion is warranted by the combined and cumulative force of all incriminating circumstances. (citations omitted). The rules of circumstantial evidence do not require that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a *reasonable* one consistent with the circumstances and facts proved, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. (citations omitted)." *Flores v. State*, 551 S.W.2d 364, 367 (Tex.Cr.App.1977). (emphasis added).

In the case at bar, appellant was arrested minutes after the robbery in question, running from between two houses approximately three and a half blocks from the robbery. When appellant was spotted by the officer, he dropped his shirt to the ground in a rolling action as though he dropped something from the shirt. When the officer questioned appellant, he was very nervous and was trying to hide his hands from the officer. The officer inspected his hands and found that they had what appeared to be a white, chalky paint on them and also on his black trousers. This was similar to the chalky, white paint one gets when you rub against the victim's house. Approximately twenty (20) minutes later, the officer returned to the spot where appellant had bent to the ground and found a .22 caliber, chrome-plated revolver. The revolver had a spent cartridge indicating that it had been fired. Also found at that spot was Menchaca's "immigration papers" that he testified were in his wallet when it was taken from him. The victim was unable to see his assailant during the robbery, but did say that appellant was the same height, weight and color as the assailant.

While none of these facts point directly and independently to defendant's guilt, they need not do so. The jurors were properly instructed on the law of circumstantial evidence. All twelve of them were satisfied, beyond a reasonable doubt, that the conclusion of guilt was warranted by the combined and cumulative force of all the incriminating circumstances. In other words, the jury concluded that every reasonable hypothesis, other than the guilt, was excluded.

The jury was in a better position than we are to make this determination. I am not saying that jury verdicts should never be disturbed. What I am saying is that under these facts I am not willing to substitute our determination for theirs. Based on the combined and cumulative force of all the incriminating circumstances, the jury's verdict is reasonable.

The fact that Menchaca testified that he lived in one address while the "immigration papers" recited a different address is of no consequence. It is not uncommon for people to change addresses. The fact that the card was "issued" on a certain date, and some seven weeks later the robbery took place is also irrelevant. The fact that there was no evidence that Menchaca ever lived at the address on the card is not material. The fact that the officer, on encountering appellant, did not immediately search the area where appellant went down, or dropped something, but found these items some twenty minutes later, is not fatal. The officer at that point was not aware that a robbery had taken place. As to the gun, there is no legal requirement that it be positively identified as being the one used in the robbery.

I also disagree that the items in question the officer found in his search were not linked to Menchaca. The documents *were linked* to Menchaca by name, and also his picture was on one of the documents. The jury had the original documents before it, and they certainly were in a position to compare Menchaca's appearance and his appearance on the photograph. The jury also had the power, by using their common sense to make the inferences that they obviously did make regarding the documents, the gun, and the chalky, white paint on appellant's hands and trousers. I agree that it would

have been better if the prosecutor had asked the victim some specific questions regarding his ownership and possession of the documents in question. However, the test is not whether the prosecutor should have asked the victim some pertinent questions regarding ownership and possession of the documents that would have made the case "airtight". The test on appeal in reviewing a circumstantial evidence case is whether there was evidence in the record from which the jury, after having been properly charged as to the law on circumstantial evidence, might reasonably conclude that every reasonable hypothesis, other than defendant's guilt, was excluded.

This case is very similar to the case of *Washington v. State*, 518 S.W.2d 240 (Tex. Cr.App.1975). This was also a case where no witness was able to identify the appellant at the scene of the crime. Three men were placed in a getaway car near the store where the robbery occurred; the car bore the description and license plate number of the vehicle belonging to appellant; the driver of the vehicle was observed wearing a hat similar in description to the one appellant was wearing when he was arrested; appellant and the two other men were arrested a few minutes after the robbery in a car which had been observed near the scene; money was found at the ground near the door of appellant's vehicle in approximately the same amount and denominations taken in the robbery; and a knife was used in the robbery and in the search of appellant's vehicle, a knife was found under the front seat. Under these facts, the Court of Appeals affirmed the conviction.

Appellant's point of error should be overruled, and the judgment of the trial court affirmed.