Harry E. BONNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 46157.

Court of Criminal Appeals of Texas.

Feb. 28, 1973.

Rehearing Denied April 18, 1973.

Lowell Clayton, Austin, for appellant.

Robert O. Smith, Dist. Atty., Michael J. McCormick, Asst. Dist. Atty., Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

The conviction is for robbery by assault; the punishment five years imprisonment.

The sole ground of error urges that the evidence is insufficient to support the con-

viction. We find the facts shown by the record are accurately stated in the State's brief, and we adopt that summary of the facts, omitting page references.

". . . . The complaining witness testified that on the evening of December 29, 1971, while in the seven hundred block of Congress Avenue in Austin, Travis County, Texas, he met a young . . . girl wearing purple colored hot pants who propositioned him for a date. He then testified that the young lady and he then proceeded to a housing project located in east Austin, and that while in route he noticed a white Corvair automobile following his car. When they arrived at the projects, he and the young lady entered an empty apartment, and being suspicious, he decided to leave, but before he could do so, a young . . . man pulled a gun on him. He identified State's Exhibit number 1 as being exactly like the gun which the man held on him. At this juncture, the man with the gun had the complainant remove his clothing and hand it to the girl in the purple hot pants. She then left the apartment with the clothes. Thereafter, the man with the gun took the complainant's watch and threatened to kill him if he told anyone. The man with the gun then left and the girl returned some ten minutes later with the complainant's clothes. Missing from his pants was some thirteen dollars and some odd cents.

"He testified that he put his clothes on and left the apartment, got in his car, and shortly thereafter flagged down a policeman and told him what had happened. The complainant then got in the car with the policeman and returned to the scene of the crime and then drove down eleventh street where they observed a car matching the description of the one the complainant had seen following him out to the apartment. Shortly thereafter, the complainant and the police officer joined another patrol car that had stopped the white Corvair. At that time the defendant was seen standing near the Corvair, but he [the complainant] could not positively identify him as the one who had actually held the gun on him.

"The complainant also testified that later, at the police station, he had his watch returned to him, as well as thirteen dollars and seventy-six cents.

"On cross-examination, the complainant testified that when the Corvair was following him out to the apartment, he observed three people in it, two . . . males and a . . . female wearing a blond wig. He again identified State's Exhibit number one as being exactly like the one the robber held on him.

"On redirect, the complainant testified that on the night in question, while the robbery was taking place, he observed a . . . female wearing a blond wig standing outside the apartment.

"Emzie Ackert testified that he was a policeman for the city of Austin, and that on the night of December 29th, 1971, he was flagged down by the complainant. Officer Ackert testified that the complainant told him what had happened and gave a description of the auto and the people involved. Officer Ackert then broadcast this description over his radio. The complainant then got in the car with Officer Ackert and shortly thereafter the two of them met with Officer Napier who had stopped a white Corvair in which the defendant and a Mr. Carter were passengers.

"Officer Roger Napier, a policeman for the City of Austin, testified that he heard Officer Ackert's broadcast and shortly thereafter observed a white Corvair parked on the street which matched the description of the one given him. He testified that he kept the Corvair under surveillance until Officer Ackert and the complainant could drive by and look at the car. After being notified that the complainant had tentatively identified the car, Officer Napier waited until the occupants returned to the car, watched them drive away, and then stopped the car. Officer Napier identified the driver of the car as one Marlin

Carter and the passenger as the appellant, Harry Bonner. He then placed both of the passengers under arrest. He testified that a search of the appellant revealed thirteen dollars and seventy-six cents, roughly the amount which had been taken at gunpoint from the complainant.

"Officer Napier then testified that after the two defendants had been booked into the city jail, two . . . females, one with a blond wig and the other wearing a purple hot pants outfit, came to the station requesting to see Carter and Bonner. The two females were later arrested and turned over to juvenile authorities.

"Officer Napier thereafter testified that at the time of his arrest, Carter had eleven unspent .22 shells in his pocket.

"Lawrence Houston then testified that he was a policeman for the City of Austin, and that on the night of December 29, 1971, he was with Officer Napier, and that when the suspects were taken to the police station he drove the white Corvair. He testified that while inventorying the car he found the complainant's watch hanging from the springs under the front seat.

"Officer Napier was recalled, and testified that the pistol, State's exhibit number one, was found by him at the time of the arrest, in the trunk of the white Corvair.

"The only evidence presented by the defendant was to show that the defendant Carter had earlier pled guilty to the offense."

The issue of the appellant's guilt was submitted to the jury on the alternative theory that he acted alone or as a principal in the commission of the offense and the jury was charged on the law of circumstantial evidence.

In Batiste v. State, 464 S.W.2d 149 (Tex.Cr.App.1971), it was said "Under the circumstances of this case, where a robbery has occurred at a location near the arrest and very close to the time of the arrest, and where the victim is unable to identify the robber, appellant's unexplained possession of the victim's eyeglasses at the time of his arrest is sufficient to sustain his conviction for robbery by assault."

In the present case the circumstances going to prove the appellant's guilt are stronger than they were in Batiste v. State, supra. The complainant observed two men and a woman wearing a blond wig in a white Corvair automobile which followed from one-half to one block behind his automobile as he and the girl in hot pants were proceeding from downtown Austin to the place in east Austin where he was robbed. As he looked through the window of the apartment in which he was robbed, the witness observed the girl in the blond wig. As soon as the witness had reported the robbery to a police officer and returned to the area where it occurred, they observed the white Corvair automobile, which had earlier followed the witness, parked within one-half mile from the place where the robbery occurred. A few minutes thereafter the appellant, along with Carter, who the appellant proved entered a plea of guilty to the offense, was arrested in the white Corvair automobile. When arrested, the appellant had thirteen dollars and seventy-six cents in his pocket. Although the complaining witness testified only that he had lost thirteen dollars and some odd cents, the officer to whom the complaining witness had initially reported the loss testified that the thirteen dollars and seventy-six cents recovered from the appellant was the exact amount that the complainant had reported taken from him. The watch taken from the complaining witness was found in the white Corvair automobile hanging from the springs under the front seat on the driver's side, and a pistol the complainant identified as being like the one used in the robbery was found in the trunk. Soon after Carter and the appellant were taken to the police station, the girl in hot pants, together with the girl in the blond wig, came to the police station inquiring about Carter and the appellant.

We have reviewed the cases cited and relied upon by the appellant and find that each is distinguishable on its facts from the present case.

The appellant's unexplained possession of the recently stolen money in the exact amount which had been taken, coupled with the finding of the watch, and the additional facts proved, are sufficient to sustain the jury's verdict and the conviction of the appellant. See Batiste v. State, supra.

The judgment is affirmed.

Opinion approved by the Court.