**John Lamar INDO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46970.**

Court of Criminal Appeals of Texas.

Dec. 12, 1973.

Will Gray, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Erwin Ernst, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

QUENTIN KEITH, Commissioner.

Appellant was charged with the murder of his mother. The State filed notice of intention to seek the death penalty, but the jury, after finding appellant guilty, assessed his punishment at life imprisonment.

Pursuant to a call, police officers of the City of Houston went to the residence of Mr. and Mrs. William Indo, arriving there shortly after two in the morning of November 30, 1969. Upon arrival, they saw

appellant in the front yard of the Indo home and he appeared to be quite excited. He was carrying a rifle in his left hand and told the officers that he had shot at a prowler who had run out of the back door of the residence. When questioned by Officer Maddux, appellant said that he lived in the house with his parents who were asleep at the time.

Mr. Maddux went inside the house and noticed, when he opened a bedroom door, that a man and a woman were lying upon a bed with blood all around. An examination revealed that Mr. Indo had died of gunshot wounds to the head and that Mrs. Indo had likewise been shot in the head, receiving wounds from which she died shortly thereafter. Appellant was then disarmed. When the rifle was unloaded, it was found to contain six live rounds in the clip, which was designed to hold eleven or twelve rounds.

The rifle was a semi-automatic .22 caliber type which would eject a fired hull and inject a live round in the chamber. The homicide detectives testified as to the finding of six expended .22 caliber hulls, one in the foyer inside the front door and a second in the hall which connected appellant's room with that of his parents. The door to appellant's room was closed and the detectives found a bullet hole therein, apparently fired from inside the room; another shot, also fired from the inside, had struck the patio door; a third shot was found embedded in the north end of the hall.

It was stipulated that if A. D. Hagar were present he could testify that on November 29, 1969, he sold a rifle bearing the serial number of that which appellant had in his possession on the night of the murders.

The firearms expert, after firing test rounds from the rifle appellant had in his possession, was unable to testify that the bullets found at the Indo home were all fired from the same rifle, but the expended bullets had class characteristics which indicated that they could have been fired from appellant's rifle.

The assistant medical examiner testified that Mrs. Indo died from two gunshot wounds above the right ear, one of which destroyed the brain substance for more than half the length of the right half of the brain. Her testimony was that Mr. Indo died from two gunshot wounds entering near the left eye and the left bridge of his nose, and the physical appearance of the second wound indicated that the weapon was in close or actual contact with the skull when fired.

Stephen Hoyle, a friend of appellant's, was called by the State, and he told of appellant's calling him about 2:00 a. m., telling that someone had broken into his home, had shot his parents, and had almost shot him. Appellant asked Hoyle to come over as soon as possible. However, when Hoyle arrived at the Indo residence, the police were already there and he was unable to see or talk with appellant.

A fireman on duty in a fire station across the street from the Indo residence told of appellant's coming to the station about two o'clock in the morning, telling him that someone had broken into his home and that he believed that his parents had been shot. A report of this information was made immediately to both the Fire and Police Departments of the City.

Appellant, then a 22-year-old philosophy and psychology student at the University of Texas at Austin, home for the Thanksgiving holidays, testified in his own behalf. He told of prior recent burglaries of his home, others in the neighborhood, and that his mother was upset over such occurrences. After accompanying his mother to Huntsville where they visited his maternal grandmother on November 28, there were further discussions of the burglaries with his mother.

The next day appellant went shopping with his mother and she was along when he bought the rifle he had on the night of

the tragedy, as well as a box of fifty shells. After taking his mother home, he went into a wooded area and fired the rifle a number of times. After spending an evening watching television, appellant said that he went to his room about ten in the evening while his parents stayed with the television. He had the rifle in his room, the clip loaded, but no live shells in the chamber. He says that he was awakened about two o'clock in the morning by the sound of gunshots; and, on investigation, saw the silhouette of a man moving in the doorway of his parents' bedroom. Grabbing his newly purchased rifle, he said that he fired at the man as the latter ran out the door.

He also testified that he fired through the glass door as he saw a man running across the patio. The back door was open but he closed and bolted it. Although scared, he went to his parents' room and saw them both lying in bed bleeding to death. He telephoned the police, reporting a burglary and shooting, telephoned Hoyle, and then went across the street to the fire station.

Appellant denied shooting his parents, denied he had any reason to kill them, and stated that he loved them. Appellant offered the pastor of his church who testified that the Indos were very active in church, that the parents were always speaking favorably of appellant and that he knew of no problems between appellant and his parents.

John Dorman, appellant's maternal uncle, and Mrs. Georgie Brasfield, his maternal grandmother, told of the good relationship between appellant and his parents, of their love and understanding of one another, and of appellant's obedience to his parents' wishes. A neighbor also testified to the close relationship between appellant and his parents and of appellant's good reputation.

The court's charge, which comes to us without objection, included proper charges on malice and circumstantial evidence.

Neither side presented any evidence at the punishment hearing; and, although appellant had filed an application for probation, no issue thereon was submitted and no objections were raised.

■ This severely truncated version of the evidence introduced in the long trial brings into focus appellant's first ground of error, that the evidence is insufficient to support the verdict. The thrust of the argument advanced is that the State produced no evidence to show motive on the part of appellant. We disagree. In 4 Branch's Annotated Penal Code (2d ed. 1956) Section 2265, p. 626, the rule is stated: "The State may prove any fact, and may make out its entire case against the defendant by circumstantial evidence."

We recognize and apply the rule that every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. Baker v. State, 447 S.W.2d 172, 174 (Tex.Cr.App.1969). Further, in determining whether circumstantial evidence is sufficient to support the conviction, the facts must be viewed in the light most favorable to the State. Ysasaga v. State, 444 S.W.2d 305, 308 (Tex.Cr.App.1969).

■ This court has long adhered to the rule that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. Flores v. State, 489 S.W.2d 901, 902 (Tex.Cr.App.1973), and cases therein cited. But, it is equally clear that the jury trying the case is authorized to accept or reject any or all testimony of any witness. Thus, as was said in Angle v. State, 486 S.W.2d 308, 309 (Tex.Cr. App.1972): "They may look to all the evidence in the case, that offered by the State as well as that offered by the appellant, in determining the facts and issues in the case." And, a killing may be made on ex-

press malice though no motive may be proved; and, it may be shown by circumstantial evidence. Ex parte Gibson, 149 Tex.Cr.R. 573, 197 S.W.2d 543 (1946).

Only appellant's testimony raised the possibility that some unidentified burglar may have shot his mother. We have but to point to a few of the discrepancies in his testimony which the jury may have observed; i. e. the location of the bullet holes in the several doors, the number of expended hulls or cartridges, the delay in telling the officer that his parents had been shot, that they were sleeping, etc.

Considering the record as a whole and viewing it in the light most favorable to the State, we find the evidence sufficient to support the judgment and ground one is overruled.

The remaining grounds brought forward all challenge, in one way or another, the alleged action on the part of the State in seeking the death penalty, excusing jurors who had conscientious scruples against its imposition, etc. The brief of the argument is well written and cites many cases from this court as well as those of the Supreme Court of the United States. We note that the trial of this cause began July 13, 1970, and the jury did not assess the death penalty.

We also note that the voir dire examination of the jury panel is not in the record before us nor is there any showing that the appellant requested that it be taken down and transcribed. Under these circumstances, as was held in Hinkle v. State, 442 S.W.2d 728, 733 (Tex.Cr.App.1969): "Nothing is presented for review." See also, Hancock v. State, 462 S.W.2d 36, 39 (Tex.Cr.App.1970).

Finding no error in the record, the judgment of the trial court is affirmed.

Opinion approved by the Court.

ODOM, J., not participating.