**Jose Socorro FLORES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52981.**

Court of Criminal Appeals of Texas.

April 6, 1977.

Rehearing Denied June 14, 1977.

William E. Adams, San Saba, on appeal only, for appellant.

Louis M. Crump, Dist. Atty., San Saba, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder. Punishment was assessed by the jury at life imprisonment.

This is a circumstantial evidence case, and the appellant in his sole ground of error challenges the sufficiency of the evidence to sustain the conviction.

The appellant was jointly indicted with Israel Quiles for capital murder. Omitting the formal parts, the indictment charged "that Jose Socorro Flores and Israel Quiles on or about the 24th day of December A.D. 1974, and before the presentment of this indictment in the County of San Saba and State of Texas, did then and there intentionally cause the death of Robert Kenneth Perkins by shooting him with a gun, and that the said Jose Socorro Flores and Israel Quiles were then and there in the course of committing and attempting to commit robbery . . . ."

The record reflects the deceased, Robert Kenneth Perkins, left his daughter's home in Tulsa, Oklahoma on the morning of December 23, 1974. He was to visit his sister in Norman, Oklahoma and his ultimate destination was the Y O Ranch in Texas at Mountain Home near Kerrville where he was employed.

On the morning of January 19, 1975 the partially decomposed body of the deceased was found by Marvin Weatherby off the highway about five miles north of San Saba. The body was frozen.

Sheriff Brantley Barker arrived at the scene and had the body removed to a funeral home in San Saba. An autopsy was performed in San Antonio the next day by Bexar County Medical Examiner Dr. Ruben Santos. Two bullet holes were found, one behind the right ear and one on the right side of the neck. Two bullets or fragments

were removed from the deceased's head and neck and turned over to the sheriff. Dr. Santos related the bullet wounds to the head and neck caused the death and the wounds had been caused by a small caliber gun. He was not questioned as to the time of death.

A traffic ticket was found on the body, and the arresting officer was contacted. Highway Patrolman Bob Wilcox testified that about 5:45 p. m. on December 24, 1974 he stopped the deceased in Mills County between Goldthwaite and San Saba for speeding. The deceased was driving a 1966 white Chrysler four door car bearing 1974 Missouri license plate number EX0590. The deceased had a Michigan driver's license which conformed to his appearance. The deceased gave as his residence the Y O Ranch at Mountain Home. Wilcox had the deceased sit in the patrol car while he issued the traffic ticket. He observed that "there were three Latin-American subjects" in the back seat of the Chrysler and that the deceased was pulling a boat and trailer. The deceased drove off in a southerly direction on State Highway # 16 towards San Saba.

A day or two after Christmas, 1974, a boat was reported to be three or four miles south of San Saba on State Highway # 16. It was recovered by Sheriff Barker.

Highway Patrolman Bill Rowan testified he was stationed in Pearsall in Frio County, which is located 53 miles south of San Antonio on Interstate 35, and that while patrolling that highway in Frio County he stopped the appellant Flores for speeding at 5:20 p. m. on December 25, 1974. A traffic ticket was issued. One other person was with the appellant, who was driving a 1966 white Chrysler, 1974 Missouri license plate number EX0590. No description was given of the other person.

On February 6, 1975 Weslaco police officer Saul Penedas observed the appellant asleep in a white 1966 Chrysler, Texas license number KNB 851 parked in a rest area. He observed that the rear license plate was covered with bugs while the front license plate was apparently clean, and he did not consider this normal. Penedas ran a license check and discovered that KNB 851 had been issued to a 1967 Ford. The Chrysler had two inspection stickers, one for a 1967 Pontiac and one for a 1964 Buick. Appellant identified himself with a driver's license and his companion in the driver's seat gave the officer a Wisconsin work permit with his name, Israel Quiles. Appellant stated he was the owner of the Chrysler and had just purchased it in Laredo. Appellant stated his car papers were in the trunk and he voluntarily opened the trunk. When he did, Penedas saw a syringe, a capsule and other narcotic paraphernalia. Appellant and his companion were arrested. A check showed that the Chrysler was the one registered to the deceased in Missouri and given license plate number EX0590.

A receipt from Victor Ramirez was found on appellant and his companion. Ramirez testified he operated a tavern about 10 miles north of Weslaco and that there he saw the appellant and Israel Quiles sometime in January, 1975. He reported they asked him to keep some personal belongings in a suitcase and he agreed and placed it in the trunk of the car near the tavern. Ramirez opened the trunk for Ranger Bruce Castille, who recovered the suitcase, including clothing and other items.

Theresa Lorenzo, the deceased's daughter, identified a shaving kit, lotion and keys in the suitcase as belonging to her father. One of the keys was to her house in Tulsa, Oklahoma. She also identified some of the clothing recovered as being those of her father.

Bobby Rhodes of the Y O Ranch, where the deceased had frequently worked, testified that deceased left Kerrville about December 10, 1974 to go to Missouri. Rhodes recognized some of the clothes found in the recovered suitcase as some he had given the deceased. He identified other clothing found therein as those he had seen the deceased wear on occasion. He related that the deceased owned a Thompson Center Contender pistol with a 5 mm. barrel, "a little smaller caliber than a .22, about a .20 caliber." He testified the deceased had taken the gun with him on his trip.

Fred Reymer, firearms expert with the Department of Public Safety, testified the ballistics test on the bullets or bullet fragments submitted to him by Sheriff Barker showed they came from a .22 caliber pistol that was high powered and required a metal jacket. A Thompson Center Contender pistol was one of three types of weapons he indicated the bullets could have been fired from.

Ranger Bob Favor cut out a portion of the front seat of the Chrysler where bloodstains were found, and this item and a shirt with bloodstains which was claimed by appellant were submitted for lab analysis.

Chemist Janice Hoskins of the Department of Public Safety laboratory testified that one piece of the seat covering had human blood on it as well as appellant's shirt, but these stains would not respond to typing procedures. She also related that the deceased's shirt submitted by Sheriff Barker contained nitrate particles, indicating gun powder residue.

The court in its charge submitted murder (V.T.C.A., Penal Code, § 19.02) rather than capital murder (V.T.C.A., Penal Code, § 19.-03), as charged in the indictment. The court, among other things, charged on the law relating to parties to the offense and criminal responsibility and the law of circumstantial evidence.

█ It is well established that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt and proof amounting only to a strong suspicion is insufficient. *Moore v. State*, 532 S.W.2d 333 (Tex.Cr. App.1976); *Higgins v. State*, 515 S.W.2d 268 (Tex.Cr.App.1974); *Indo v. State*, 502 S.W.2d 166 (Tex.Cr.App.1973); *Flores v. State*, 489 S.W.2d 901 (Tex.Cr.App.1973); *Culmore v. State*, 447 S.W.2d 915 (Tex.Cr. App.1969).

█ In circumstantial evidence cases it is not necessary, however, that every fact point directly and independently to the defendant's guilt. It is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. See *Mills v. State*, 508 S.W.2d 823 (Tex.Cr.App.1974); *Herndon v. State*, 543 S.W.2d 109 (Tex.Cr.App.1976). The rules of circumstantial evidence do not require that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a reasonable one consistent with the circumstances and facts proved, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Jones v. State*, 442 S.W.2d 698 (Tex.Cr.App. 1969); *Taylor v. State*, 87 Tex.Cr.R. 330, 221 S.W. 611, 615 (1920).

█ In determining whether incriminating circumstances are sufficient, each case must be tested by its own facts. *Moore v. State*, supra; *Indo v. State*, supra; *Baker v. State*, 447 S.W.2d 172 (Tex.Cr.App.1969); *Ysasaga v. State*, 444 S.W.2d 305 (Tex.Cr. App.1969).

In *Moore v. State*, supra, it was stated:

"Ordinarily, the test on appeal is whether there was evidence from which the jurors (advised of the restrictions the law places upon them in condemning one on circumstantial evidence) might reasonably conclude that every reasonable hypothesis other than guilt was excluded. *Ysasaga v. State*, supra (444 S.W.2d 305). Mere presence in the vicinity of a crime, even when coupled with flight, is not alone sufficient to sustain a conviction. *Ysasaga v. State*, supra."

In 24 Tex.Jur.2d, Evidence, § 742, p. 422, it is written:

"In criminal cases, a judgment of conviction, to be sustained on appeal, must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged. . . ." See also *Culmore v. State,* supra; *Ysasaga v. State,* supra.

The testimony shows that the deceased was alive on December 24, 1974 when officer Wilcox gave him a speeding ticket in Mills County about 5:45 p. m. At the time he was with "three Latin-American subjects," but Wilcox did not describe them. The record does not show whether they were male or female, adults or children, or their appearance even in a general way. The deceased was pulling a boat and drove off towards San Saba.

The deceased's body was found on January 19, 1975. Dr. Santos testified that the head and neck were partially decomposed and covered by maggots but the balance of the body was in a fairly good state of preservation "probably . . . having been frozen for some time." The doctor was not questioned as to the time of death, and the record is otherwise silent as to that question except as otherwise inferred from the doctor's testimony above. It is not possible to tell just when between December 24, 1974 and January 19, 1975 the death of the deceased occurred.

The deceased's body was found north of San Saba and a day or two after Christmas a boat was reported to be three or four miles south of San Saba and was recovered by the sheriff. This evidence was apparently offered to show that whomever committed the crime charged left the body and continued in a southerly direction. The problem is that no evidence was offered to show that the recovered boat was similar to the one being pulled by the deceased nor was any evidence of ownership or registration demonstrated to connect the recovered boat with the one in the deceased's possession on December 24th.

The evidence does place the appellant in possession of the deceased's Chrysler in Frio County approximately 24 hours after officer Wilcox saw the deceased alive in Mills County and many miles away. At this time appellant was with another individual who was not identified in any manner.

On February 6, 1975 appellant was still found in possession of the deceased's Chrysler in Weslaco in the Rio Grande Valley area. It bore license plates and inspection stickers issued to other cars. Clothing and other items belonging to the deceased were found in a suitcase in a car trunk where they had been left by the appellant and Israel Quiles.

The murder weapon was never found, though the State attempted to leave the inference that it could have been with the deceased's own pistol. Bloodstains were found on the Chrysler's front seat and on appellant's shirt, but it was not shown when the stains could have been made. While the stains were of human blood, they did not respond to typing procedures.

This then is the evidence against the appellant, the most damaging of which is that he was in possession of the deceased's car about twenty-four hours after the deceased was last seen alive, and that on February 6, 1975, he was still in possession of the car bearing license plates issued to another car, etc., as well as having stored a suitcase with many items belonging to the deceased.

■ It is true that an accused's recent unexplained possession of a victim's stolen property may be sufficient to sustain a conviction for robbery, *Bonner v. State,* 492 S.W.2d 498 (Tex.Cr.App.1973); *Batiste v. State,* 464 S.W.2d 149 (Tex.Cr.App.1971); *Mankin v. State,* 451 S.W.2d 236 (Tex.Cr.App.1970), or a conviction for theft, *Barnes v. State,* 520 S.W.2d 401 (Tex.Cr.App.1975); *Smith v. State,* 518 S.W.2d 823 (Tex.Cr.App.1975), or a conviction for burglary, *Pulido v. State,* 503 S.W.2d 578 (Tex.Cr.App.1974). Further, it is well settled that evidence of a

defendant's possession of the fruits of a crime are admissible in a murder case. *Skidmore v. State,* 530 S.W.2d 316 (Tex.Cr. App.1975). We know of no case, however, where recent unexplained possession by an accused of a victim's stolen property is sufficient by itself to sustain a conviction for murder.

■ In the instant case there is no showing that the appellant was at or near the scene of the crime and no showing as to actual time of the deceased's death. While the appellant was placed in possession of deceased's car on the dates mentioned as well as other items of deceased's property, this proof when coupled with all other circumstances to be considered amounts only to proof of a strong suspicion or mere probability that the appellant acting alone or together with another committed the murder charged. It does not exclude to a moral certainty every other *reasonable* hypothesis except the appellant's guilt.

*The judgment is reversed and the cause remanded.*