James JACKSON, Appellant,

v.

STATE of Texas, Appellee.

No. C14–81–774CR.

Court of Appeals of Texas,
Houston (14th Dist.).
Fourteenth Supreme Judicial District.

July 14, 1983.

Allen Isbell, Houston, for appellant.

Calvin Hartmann, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

MURPHY, Justice.

A jury found James Jackson (Appellant) guilty of burglary of a building. The sole issue on appeal is whether the evidence, which was totally circumstantial in nature, was sufficient to sustain the conviction. We hold the evidence was insufficient, reverse the conviction and remand this cause to the trial court with instructions to enter a judgment of acquittal.

On March 13, 1981, Shirley's Lounge at 2207 Lockwood in Houston was burglarized. A number of items, including a jar of pickled pigs' feet, were taken from the building. An eyewitness, Sabrina Boudreaux, called Curtis Payne, a business associate of the owner, Shirley Fontenot, to report the burglary. Albert Julien and Larry Dodson subsequently were arrested at the apartment of Evelyn Motton. The arresting officers were called back to Shirley's Lounge where Curtis Payne and Shirley Fontenot informed them that Appellant had also been involved in the burglary and provided a description of him. Appellant was arrested later that night in the parking lot of the Della Motel, a known location for the transfer of stolen property, as he and several other people were sitting in a car owned and driven by Ben Johnson. At the time of the arrest, Appellant was eating a pickled pig's foot and a jar of pickled pigs' feet was near him in the back seat of the car. The policemen took Appellant and the jar of pigs' feet to Shirley's Lounge, where Curtis Payne identified the label on the jar of pigs' feet as the same brand as those sold by the lounge.

At trial Sabrina Boudreaux testified that she saw only Larry Dodson and Albert Julien at the scene of the crime. Curtis Payne testified that he saw two men leaving the building and noticed a third person outside, but he was unable to identify any of them.

The testimony of Evelyn Motton was critical to Appellant's conviction. She stated that on the night of the crime, she overheard a conversation in her apartment between Larry Dodson, Albert Julien, and Appellant, in which the three men were discussing the burglary of "a place." She stated she heard Appellant say "he didn't care how he got the money—he would do it anyway." Motton at first testified she left her apartment for approximately thirty minutes and when she returned, Dodson, Julien, Appellant and another man, Ben Johnson, were there with several articles, including some pickled pigs' feet. At another point in her testimony, however, she said she was there with Dodson, Julien and Appellant when Ben Johnson entered her apartment and joined the group. She said the police did not conduct a search of her apartment when they came to arrest Dodson and Julien, and she and Appellant moved the goods to a vacant apartment in the same building. She also stated that later the same night when she returned to the vacant apartment, the goods were not there, and only she and Appellant had known their location. She offered no explanation of Ben Johnson's role in the sequence of events.

Toward the end of the trial, Motton was recalled to testify. In describing how the stolen goods were moved to the vacant apartment, she stated:

A:  ... I told *them* just put them (the goods) in the apartment ... I told *them* to put it in the ...

Q:  You told who?

A:  I told James.

Q:  You told James to put it in the apartment?

A: Yes.

Q: You wanted to get it out of your house, didn't you?

A: Yes.

(Emphasis added).

It is obvious that Motton's second testimony indicates that someone in addition to Appellant was involved in moving the goods.

Defense witnesses included Terry Lynn Marlboro and Albert Julien, both of whom were serving prison terms at the time of trial. Marlboro, who was in Ben Johnson's car with Appellant when he was arrested, testified that Johnson stopped to pick up Appellant at the corner of Harlem and Lyons Ave. Marlboro said they bought the jar of pigs' feet from an unidentified person whom they had encountered while driving around. Appellant's account of how the group came into possession of the pigs' feet was consistent with Marlboro's testimony.

Albert Julien testified only he and Larry Dodson were involved in the burglary; that Appellant was not in Motton's apartment planning the crime; and that Appellant arrived at the apartment only five minutes before the police.

The court overruled Appellant's motion for an instructed verdict of acquittal. The charge to the jury contained a proper instruction on circumstantial evidence. Appellant was found guilty and was sentenced to five years' imprisonment. In his sole ground of error, Appellant contends the circumstantial evidence introduced at trial was insufficient to support the conviction.

■ The burden of proof in a circumstantial evidence case is the same as in any criminal prosecution: the state must prove each element of the offense charged beyond a reasonable doubt. TEX.CODE CRIM.PROC.ANN. art. 38.03 (Vernon 1979). Proof which creates only a strong suspicion that the accused committed the offense is not sufficient. *Freeman v. State*, 647 S.W.2d 271, 274 (Tex.Crim.App. 1983). The evidence must establish guilt of the accused "to a moral certainty, so as to exclude all reasonable doubt" in the mind of the trier of fact. *Id.* at 275.

The correlative concepts of reasonable doubt and moral certainty appeared in a frequently quoted passage from the venerable case of *Commonwealth v. Webster:*

> Then, what is reasonable doubt? It is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt; because every thing relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which ... leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge...
>
> (T)he evidence must establish the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding, and judgment, of those who are bound to act consciously upon it. This we take to be proof beyond a reasonable doubt; because if the law, which mostly depends upon considerations of a moral nature, should go further than this, it would exclude circumstantial evidence altogether.

*Commonwealth v. Webster*, 59–60 Mass. 295, 320 (1850).

■ Participation in a criminal enterprise may be inferred from the circumstances, and thus need not be shown by direct evidence. *Freeman v. State*, 647 S.W.2d at 274. *But see Carlsen v. State*, 654 S.W.2d 444 at 447 (Tex.Crim.App.1983) (absence of direct proof of participation in theft created reasonable doubt). However, every basic circumstances from which an ultimate fact may be inferred must be proved by direct evidence, so an inference may not be based on an inference. *Spencer v. State*, 628 S.W.2d 220, 225 (Tex. App.—Corpus Christi 1982, pet. ref'd); *Williamson v. State*, 156 Tex.Cr. 520, 244 S.W.2d 202, 204 (1951).

■ In reviewing sufficiency of the evidence cases on appeal, the general rule is that an appellate court will view the evi-

dence in the light most favorable to the jury verdict. *Bowers v. State,* 570 S.W.2d 929 (Tex.Crim.App.1978). In reviewing circumstantial evidence cases such as this one, however, the appellate court views the evidence in light of the presumption that the accused is innocent, and the court will not presume any acts against him which have not been shown to have been committed by him. *Carlsen v. State,* 654 S.W.2d 444 (Tex.Crim.App.1983); *Flores v. State,* 551 S.W.2d 364, 368 (Tex.Crim.App.1977).

■ Some opinions have formulated the test for sufficiency of circumstantial evidence in terms of "excluding all other reasonable hypotheses except the guilt of the accused." *See, e.g., Flores v. State,* 551 S.W.2d at 367; *Ysasaga v. State,* 444 S.W.2d 305, 308–309 (Tex.Crim.App.1969). This is equivalent to asking, in light of the presumption of innocence of the accused, whether the combined evidence creates a moral certainty of guilt or, in other words, guilt beyond a reasonable doubt.

■ We believe the analysis of the sufficiency of the evidence at the trial and appellate levels is now identical as a consequence of *Carlsen v. State.* A conviction will not be sustained on appeal if, as at trial, the evidence does not produce in the mind of the appellate court a firm conviction or "moral certainty" of the guilt of the Appellant. *See also Flores v. State,* 551 S.W.2d at 368.

■ In evaluating the sufficiency of circumstantial evidence, each case must be tested by its own facts to determine if the conviction is justified. *Flores v. State,* 551 S.W.2d at 367.

■ Keeping these general considerations in mind, we believe the cumulative evidence which connects Appellant with the burglary of Shirley's Lounge is so tenuous that we are unconvinced, to a "moral certainty," that he is guilty as charged.

Officer Cox, the policeman who arrested Appellant, testified that Curtis Payne and Shirley Fontenot told him Appellant had been involved in the burglary, and it was based on that bare, unsubstantiated information that he began to look for Appellant, and ultimately arrested him. We think it significant that there is no evidence in the record to show that Payne and Fontenot connected Appellant with the burglary. Fontenot was visiting a friend in the hospital at the time of the burglary, and her testimony did not incriminate Appellant in any fashion. Payne was unable to identify the third person who was on the other side of the fence outside Shirley's Lounge during the burglary. Furthermore, Payne's testimony did not reveal that he had given Officer Cox any information leading to Appellant's arrest, nor did it contain any explanation of why he suspected Appellant.

Evelyn Motton was the only witness whose testimony incriminated Appellant. When she was recalled to testify at the end of the trial, however, she indicated that more than one person moved the stolen goods to a vacant apartment, contradicting her prior testimony.

■ When inferences may be drawn from several independent sources, each of which tend to reach the same conclusion, these inferences reinforce each other and, therefore, cumulatively may be given increased weight. *Commonwealth v. Webster,* 59–60 Mass. at 317. On the other hand, when few sources of proof are involved, any resulting inferences are weaker. We believe the evidence in this case falls in the latter category.

■ The State would have us apply the so-called "presumption" of guilt which arises from the unexplained possession of recently stolen property, relying on *McKnight v. State,* 399 S.W.2d 552 (Tex. Crim.App.1966). It is a misnomer to call this judicially created device a "presumption," for there can be no presumptions against one accused of a crime; all presumptions must be in his favor. *Massey v. State,* 154 Tex.Cr. 263, 226 S.W.2d 856, 860 (1950). Instead, we believe it to be more analytically correct to say that an inference of guilt may be drawn by the trier of fact if the possession is (1) personal, (2) recent, (3)

unexplained, and (4) involves a conscious assertion of property rights by the accused. *Randolph v. State,* 505 S.W.2d 845, 846 (Tex.Crim.App.1974). It should be obvious that for such an inference to be drawn, however, the property must first be shown to have been stolen.

The only evidence that the pigs' feet in Appellant's possession were stolen property came from the testimony of Curtis Payne, who merely identified the brand as being identical to that sold by Shirley's Lounge. The fact that Appellant possessed the same brand of pigs' feet is not clear proof that they were, in fact, the pigs' feet which were stolen from Shirley's Lounge. *See Thompson v. State,* 615 S.W.2d 760, 761 (Tex.Crim.App.1981). Short of clear proof that the pigs' feet possessed by Appellant were stolen, no inference of guilt may be made, for to do so would be heaping an inference upon another inference.

In addition, at trial Appellant and Marlboro offered an exculpatory explanation of how the pigs' feet came into their possession. The jury is not bound to accept the explanation offered, for the reasonableness of the story is a question of fact. *Adams v. State,* 552 S.W.2d 812, 815 (Tex.Crim.App.1977). However, the State failed to disprove the account, and has produced no other circumstances which would indicate the explanation was false or unreasonable. *Id.* at 815; *Reed v. State,* 487 S.W.2d 78, 80 (Tex.Crim.App.1972).

An additional reason for our refusal to allow an inference of guilt from Appellant's possession of the pigs' feet is that his possession was not personal and exclusive. There were four other people in the car at the time of the arrest. *See Randolph v. State,* 505 S.W.2d at 846–847.

In summary, we do not have the required "reasonable and moral certainty" of the fact that the pigs' feet in Appellant's possession were taken by him during the course of a burglary of Shirley's Lounge. The cumulative weight of all the evidence produces no more than a mere suspicion

that Appellant may have been involved in the crime, but suspicion is not enough. *Freeman v. State,* 647 S.W.2d at 274.

The State has not met its burden of proving guilt beyond a reasonable doubt in order for us to sustain the conviction of Appellant for Burglary of a Building under Tex.Penal Code Ann. § 30.01 et seq. (Vernon 1974).

Accordingly, we reverse the judgment and remand this cause to the trial court with instructions to enter a judgment of acquittal.

JUNELL, Justice, dissenting.

I respectfully dissent. I believe the circumstantial evidence is sufficient to support the conviction. Evelyn Motton gave the following testimony: At her apartment on the evening of March 13, 1981, she heard Larry Dodson, Albert Julien and Appellant talking about burglarizing a place; and she heard Appellant say he didn't care how he got the money, that he would do it anyway. She heard Dodson say he had already cased the place. Motton then left the apartment, returning about thirty minutes later. Her testimony is conflicting concerning the persons who were present at the apartment when she returned. She first said that Dodson, Julien, Ben Johnson and Appellant were there. Later she testified repeatedly and positively that Dodson, Julien and Appellant were the only persons at the apartment when she returned and that those three persons had in their possession in the bedroom a jar of pickled pigs' feet, a calculator or adding machine, an extension cord, candy, potato chips and two billfolds. Motton also testified that shortly after she returned to the apartment, Ben Johnson knocked on the door and she answered the door and let him in. The police came to the apartment and arrested Dodson and Julien. The police did not search the apartment and did not see the above described merchandise, all of which was still in the bedroom. After the police left with Dodson and Julien, Motton and Appellant moved all of the merchandise to a nearby apartment that was vacant. Ben Johnson had left the

apartment before Appellant left. Motton and Appellant were the only persons who knew that the merchandise had been moved from Motton's apartment to the vacant apartment. After Motton and Appellant had moved the merchandise to the vacant apartment, Appellant left Motton's apartment. He was alone when he left. Later that same night Motton went to Shirley's Lounge to try to reason with Curtis Payne. She told Payne that if he would not press charges against Dodson, she could get back the things that had been stolen. Then Motton went back to the vacant apartment, but the merchandise she and Appellant had put there was gone.

Curtis Payne testified to the following: He and Shirley Fontenot operated Shirley's Lounge or Cafe. He was telephoned by Sandra Boudreaux about two men breaking into the lounge. He and his son went to the lounge and saw two men standing inside the building holding the cash register. He saw a third person on the other side of the fence at the side of the building. The two men inside the cafe dropped the cash register and came outside when they saw Payne. There was merchandise (including candy, gum, soda water and pigs' feet) stacked up at the side of the building near the fence. The third person on the other side of the fence was taking the merchandise over the fence. Payne could not identify either of the two men who came out of the cafe, and he likewise could not identify the third person on the other side of the fence. Later that night Officer Cox of the Houston Police Department came back to Shirley's Lounge, and he had Appellant in the back of the police car. Cox went to the trunk of the car and asked Payne to see if he could identify any of the merchandise. Payne went to the car trunk, and the first thing he saw was a jar of pickled pigs' feet. Payne recognized that jar of pigs' feet. He said it came from his cafe. When asked how he knew that, Payne explained that he had a case of jars of pigs' feet in the back of the cafe and another jar sitting on the counter. All of those jars and the one in the trunk of the police car were the same brand.

Officer Cox testified that at the time he arrested Appellant, Appellant was sitting in the back seat of a Lincoln automobile at the Della Motel on Lyons Avenue in Houston. Two other males were in the front seat. At the time of his arrest Appellant was eating a pickled pig's foot, and there was a jar of pigs' feet between his legs.

Albert Julien's testimony included the following: Pickled pigs' feet were among the items stolen by Julien and Dodson from Shirley's Lounge. The pigs' feet were taken by Julien and Dodson to Motton's apartment. The other items stolen included potato chips, candy, pickles and a billfold. Julien admitted that he and Dodson planned the burglary while they were at Motton's apartment earlier that same evening. Julien denied that Appellant was involved in any way.

I think the foregoing evidence is sufficient to prove beyond a reasonable doubt that (1) Appellant participated in the planning of the burglary, (2) there was a third person on the other side of the fence taking the stolen merchandise over the fence, (3) Appellant was that third person, (4) Appellant was in possession of the stolen merchandise at Motton's apartment, (5) Appellant helped Motton move the stolen merchandise to the vacant apartment, (6) Appellant later that night went back to the vacant apartment and retrieved the stolen merchandise, and (7) Appellant was in possession of the stolen pickled pigs' feet when he was arrested in the Lincoln automobile at the Della Motel. Although there was other evidence which conflicted in some of the details with that set forth above, I think the jury was entitled to resolve such conflicts, to believe the evidence set forth above and to find Appellant guilty. I would affirm the conviction.

The above evidence convinces me that this is not a case in which the conviction depends alone on the inference or presumption of guilt which is permissible from the unexplained possession of recently stolen property. It is stated in the majority opinion that the *only* evidence that the pigs'

feet in Appellant's possession were stolen property was Curtis Payne's testimony that the jar of pigs' feet found in Appellant's possession at the time of his arrest was the same brand as that sold at Shirley's Lounge. That statement by the majority ignores all the other evidence I have outlined above connecting Appellant with the planning and commission of the offense and his possession at Evelyn Motton's apartment of the pigs' feet actually stolen in the burglary. All of this other evidence would seem to me to make inapplicable in this case the strict rules relating to identification of the property found in an accused's possession which have been applied in cases where there was no other evidence connecting the accused with the commission of the offense.

Furthermore, it seems to me that the majority in its opinion would require the State to prove the falsity of any explanation offered by an accused for his possession of recently stolen property, whether such explanation was reasonable or unreasonable. I believe that is not the law. In my opinion the law is correctly stated in 19 Tex.Jur.3d *Criminal Law* § 725 (1982) as follows:

> The presumption or inference against the defendant arising from the fact of possession is rebutted by a *reasonable* explanation, if not shown to be false, and necessitates further evidence of his guilt before a conviction is authorized. (Emphasis added).

I believe that if the explanation offered by the accused or his witnesses is such that the trier of fact would be entitled to reject it as being unreasonable, then the State has no burden to prove falsity of the explanation and the jury could reject it and find the accused guilty. In the instant case the explanation offered by the defense was as follows: Between the hours of 11:00 p.m. and 12:30 a.m. on March 13, 1981, Terry Marlboro, Beverly Jones and Brenda Jones were riding around in a Lincoln automobile owned and driven by Ben Johnson. They saw Appellant standing on the corner of Harlem and Lyons Avenue. Appellant got in the car and they proceeded on toward the Della Motel on Lyons Avenue. While on their way they were stopped by a man who wanted a ride. They did not give him a ride, although Marlboro testified that the man worked for Ben Johnson, the driver. That man had a gallon jar of pickled pigs' feet. One of the other girls in the car was hungry and asked the man for a pig's foot. He refused, saying he was not going to "bust the jar down." The girl then asked if she could buy a pig's foot. The man said "no," but then offered to sell the whole jar. The girl had no money. Appellant asked the man how much he wanted and gave him four dollars for the jar of pigs' feet. Then they drove on to the Della Motel. When they arrived, Officer Cox got out of his car and asked Ben Johnson for his license. Cox pulled a pistol on Appellant, called him all kinds of names and placed Appellant under arrest.

The above explanation was given by Marlboro and corroborated by Appellant. It is interesting to note that Appellant, on being questioned about buying the pigs' feet at a time between 12:00 midnight and 12:30 a.m. from a man standing on the street who stopped them and wanted a ride testified as follows:

Q. And he just happened to be carrying a gallon jar of pickled pigs' feet?

A. He had a box *in his car.* (Emphasis added).

No explanation was ever given concerning why the man needed a ride if he had a car or why they did not give a ride to a man who worked for Ben Johnson, the driver.

I think that at the very least the explanation given by the defense for the possession of the jar of pickled pigs' feet was such that the jury was entitled to disbelieve it as being unreasonable. In my opinion the explanation really approaches what was described by presiding Judge Onion in *Callahan v. State,* 502 S.W.2d 3 (Tex.Crim. App.1973) as "too tall a tale to swallow." In the instant case the jury was unable to swallow the tale. I, too, am unable to do

so; therefore, I believe the conviction should be affirmed.