In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00041-CR


______________________________




WILLIAM DUDLEY HALEY, III, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 22534




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A Fannin County jury convicted William Dudley Haley, III, of indecency with a child by
sexual contact. Following the jury's punishment assessment, the trial court sentenced Haley to
twenty years' imprisonment. Haley appeals the conviction, contending the evidence is legally and
factually insufficient and the trial court erred when it admitted evidence of a prior deferred
adjudication that lacked proper findings that the evidence substantiated Haley's guilt in the prior
case. We affirm the trial court's judgment. 

I. Factual Background

 On August 12, 2005, Haley approached his neighbor K.G. and her friend C.S., two females,
and asked if they would be willing to work the concession stand at his paintball field. C.S. was
thirteen years old at the time of the incident, and K.G. was fourteen years old. Haley asked the two
girls if they would like a tour of the paintball field. After C.S. and K.G. agreed, Haley drove both
girls out to his field to show them the facility. After Haley showed both girls around, he offered
them a beer, which C.S. accepted. (1) Sometime after that, the conversation shifted into a sexual
discussion about Haley's conquests. K.G. testified that Haley confessed "he had done a mother and
a daughter at the same time, and how the youngest person he had been with sexually was a 13-year-old." K.G. testified that during the conversation, "[Haley] started showing C.S. and me how to
perform oral sex by taking our fingers and trying to stick it in his mouth." K.G. stated she was able
to pull away, but Haley "managed to get C.S.'s [finger] in his mouth." 

 C.S. testified Haley "licked my finger up and down." Both girls testified Haley stated "[he]
wanted to try to make [them] have multiple orgasms, and that if he couldn't, he would pay us a
hundred dollars each." C.S. stated Haley "asked if K.G.'s breasts were real." Haley then asked both
girls about their sexual experience and whether they had "done anything." K.G. testified Haley also
announced "he had lotion and . . . toys . . . and promise[d] not to hurt us." According to K.G., Haley
then proceeded to move "his hand all of the way down [C.S.'s] body." C.S. recalls "he took his
finger and ran it from my neck all of the way down, avoiding the major areas, and ran all the way
down to my thigh." During cross-examination, C.S. stated that Haley "ran his finger, he had made
it to like where you run it between. He could have grazed--it's been so long, I really don't
remember." Additionally, when cross-examined, C.S. was asked, "So he may or may not have done
that, but you have no memory of it if he did?" C.S. replied, "Correct." However, on redirect
examination by the State, the prosecutor asked C.S. to step down from the witness stand and
demonstrate what Haley had done. 

 Q. [State]: Okay. I'm sorry. This is going to be embarrassing. If you
would stand right here, please, and with your finger, if you would, show the jury what
he did to you.


 A. (Witness complies.)

 Q. Okay. And was it about that pace or was it faster or slower?

 A. It was pretty slow.

 Q. It was pretty slow?

 A. It wasn't that fast. 

 Q. Okay. And when he went between your chest, did he touch your
breast, or no?


 A. He might have, but was just kind of probably a brush.

 Q. Okay. You think he went between your breasts and he brushed your
breast? 


 A. Uh-huh. 

K.G., though, unequivocally stated that C.S. had been physically touched on her breast by Haley.

 Q. [Defense Counsel]: Did you see him touch her breast?

 A. Yes.

 After the incident, C.S. and K.G. asked Haley to take them to K.G.'s home because it was
getting late. Haley took both girls home. 

 K.G. and her boyfriend later informed the police of the incident that occurred at the paintball
field. At trial, Sintrae Jackson, Haley's former neighbor, testified Haley confided "he would give
[K.G.] a hundred bucks if he could give her multiple orgasms," and "she's like a school girl with big
tits." Jackson testified Haley stated that he had told K.G. that "paintball is kind of like sex. It'll hurt
at first, but after a while, you just get used to it." 

 Clint Williams, Haley's former neighbor, testified that on one occasion at the paintball field,
he heard K.G. ask Haley for $400.00. He did not hear her say what the money was for. Paul
Brandon Childers, Haley's nephew, testified K.G. "was wanting money for school clothes or
something." Haley told her she could work at the paintball range for extra money, and K.G. asked
Haley if she would get "$400 an hour." Haley replied that "she wasn't worth $400 an hour." 
Childers said he did not think K.G. was joking, because she did not laugh, where everyone else
present did. 

 Haley took the stand in his own defense. He testified he never made contact with C.S.'s
breast. Haley admitted he ran his finger down the front of the victim's body, but testified he never
made physical contact. Additionally, Haley testified he had neither instigated the sexual
conversation, nor had he demonstrated for them how to perform oral sex. Haley did admit asking
K.G. to show her breasts to him. During Haley's cross-examination, he stated that K.G. wanted to
have a threesome and that C.S. had mumbled she would "have sex for a hundred." Haley stated he
turned down K.G.'s advances and responded, "if I was 40 years younger or y'all were 15 years older,
I might consider. Right now, forget it." When questioned about the contact, Haley replied he was
just playing, "but I was not going to get nowhere near any of her genital parts or anything. Her breast
or any part of her." He did admit asking to see K.G.'s breasts, and asking if they were real. Haley
advanced the defensive theory that the girls were involved in the burglary of his paintball range a
week or two after the alleged incident and that K.G. had been asking him for $400.00 for about three
months before the allegations. 

II. Legal Sufficiency 

 A. Standard of Review

 In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Additionally, we measure
the evidence against the elements of the offense with the same kind of analysis as that applied in the
test for a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); see also Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). A hypothetically
correct jury charge is used to evaluate both legal and factual sufficiency. Grotti, 273 S.W.3d at 281. 
A hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant was tried." Malik,
953 S.W.2d at 240. (2)

 B. Analysis 

 Haley complains that two elements for the offense of indecency with a child by sexual
contact are absent. He argues that the State failed to prove that he intentionally touched C.S.'s breast
or that the sexual contact alleged even occurred. 

 While it is true the victim in this case, C.S., was somewhat equivocal in her description of
the incident (Haley "might have" touched her breast "but [it] was just kind of probably a brush" and
"when  he  ran  his  finger,  he  had  made  it  to  like  where  you  run  it  in  between.  He  could
have grazed - - it's been so long, I really don't remember"), but K.G. witnessed the encounter, and
stated she saw Haley touch C.S.'s breast. K.G. also described comments by Haley that "he had lotion
and . . . toys . . . and promise[d] not to hurt us." K.G.'s testimony then revealed that Haley proceeded
to move "his hand all of the way down [C.S.'s] body." C.S. testified Haley likely brushed his finger
against her breast while making his way down her body and stopping mid-thigh. K.G., though,
testified she saw Haley touch C.S.'s breast. 

 Additionally, the State provided sufficient evidence that Haley intentionally touched C.S.'s
breast. Haley admitted to having a conversation on the subject of sex with two minors and that he
and two children traveled to his paintball field where he offered each an alcoholic beverage. Haley's
testimony also revealed he asked K.G. to reveal her breasts to him. K.G. also testified that Haley
had kissed her on her cheek and that she had to pull away from him. K.G.'s and C.S.'s testimony also
revealed that Haley placed the finger of C.S. in his mouth for the purpose of showing them how to
perform oral sex. K.G. said she was able to keep Haley from doing the same to her finger. Intent
may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. 
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The standards of review apply equally
to direct and circumstantial evidence cases. Earhart v. State, 823 S.W.2d 607, 616 (Tex. Crim. App.
1991); Vela v. State, 771 S.W.2d 659, 660 (Tex. App.--Corpus Christi 1989, pet. ref'd). "It is
enough if the conclusion is warranted by the combined and cumulative force of all the incriminating
circumstances." Flores v. State, 551 S.W.2d 364, 367 (Tex. Crim. App. 1977). Since "[e]ach fact
need not point directly and independently to the guilt of the accused, as the cumulative effect of all
the incriminating facts may be sufficient to support the evidence," there is sufficient legal evidence
to sustain Haley's conviction. Id. at 367. Considering the above evidence, a rational jury could have
found the essential elements of the crime, illustrated in the hypothetically correct jury charge, beyond
a reasonable doubt. Haley's second point of error is overruled.

III. Factual Sufficiency 

 A. Standard of Review

 Evidence that rationally supports a guilty verdict beyond a reasonable doubt under the legal
sufficiency standard can still be factually insufficient. Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006). Evidence is factually insufficient to support the verdict if it is clearly wrong or
manifestly unjust or against the great weight and preponderance of the evidence. Id. The difference
between the legal and factual sufficiency standards is that "the former requires the reviewing court
to defer to the jury's credibility and weight determinations while the latter permits the reviewing
court to substitute its judgment for the jury's on these questions 'albeit to a very limited degree.'"
Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) (quoting Watson v. State, 204
S.W.3d 404, 416-17 (Tex. Crim. App. 2006)); Marshall, 210 S.W.3d at 625. We view the evidence
in a neutral light and determine whether the proof of guilt is obviously so weak as to undermine
confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be
clearly wrong and unjust. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Roberts
v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Martin v. State, 252 S.W.3d 809, 820 (Tex.
App.--Texarkana 2008, pet. granted). 

 B. Analysis

 Haley argues that his conviction lacked factual sufficiency because the State failed to prove
the elements of intent to touch and actual touching. The jury had the opportunity to weigh the
evidence presented by both parties and make a credibility determination. The testimony presented
at trial could have led a reasonable jury to conclude that it was Haley's intent to arouse or gratify the
sexual desire of a person. Haley's intent to cause arousal can be inferred from his conduct, remarks,
and the surrounding circumstances. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App.
1981). In this case, the testimony presented demonstrated Haley: (1) led a conversation on the
subject of sex with two young girls; (2) attempted to educate two young girls about oral sex by
placing the finger of a youth in his mouth; (3) made suggestive remarks to solicit sex from two
youths; and (4) made physical contact with the breast of a child. 

 Any touching by a person, including touching through clothing, of a child's breast is
considered sexual contact. Resnick v. State, 574 S.W.2d 558, 560 (Tex. Crim. App. 1978); Miles
v. State, 157 Tex. Crim. 188, 247 S.W.2d 898, 899 (1952) (holding flesh-to-flesh contact not
required in offense of fondling); Guia v. State, 723 S.W.2d 763, 765 (Tex. App.--Dallas 1986, pet.
ref'd). Haley testified he never made physical contact with any part of C.S.'s body. However, K.G.'s
testimony asserted that C.S. had been physically touched on her breast by Haley. Although C.S.
herself was forgetful as to whether the touching actually occurred, a rational jury could have found
both the actual touching and intent to touch elements were proved beyond a reasonable doubt
through K.G.'s testimony.

 Haley relies in great part on C.S.'s imprecise recollection of the event and cites Connell v.
State, 233 S.W.3d 460 (Tex. App.--Fort Worth 2007, no pet.), in arguing the evidence is factually
insufficient to support the jury's verdict. We find Connell distinguishable. There, the victim
"testified that Connell's hand touched his anus 'on occasion' but at no point resolved whether a
second touching had occurred." Id. at 469. The Fort Worth court found the evidence factually
insufficient to support a second conviction for indecency by contact. Here, Haley was convicted only
of one touching; and there was other evidence supporting the jury's verdict. 

 Haley testified he never touched C.S.'s breast, and he denied many of the suspect instances
of conduct alleged by the two girls. He offered potential motives by the girls, that they were after
money or had been involved in a burglary of his property. The jury was free to believe or reject
Haley's theory. See Laster v. State, 275 S.W.3d 512, 524-25 (Tex. Crim. App. 2009); Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). 

 Since the Court may only overrule the jury verdict if it "is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust," we find that the evidence is factually
sufficient to sustain Haley's conviction beyond a reasonable doubt. Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App. 2007); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992,
pet. ref'd, untimely filed). Haley's first point of error is overruled. 

IV. Admission of Prior Deferred Adjudication 

 Haley claims that during the punishment phase of the trial, the trial court improperly admitted
evidence of a prior deferred adjudication, which resulted from Haley's 1980 plea of guilty to another
charge of indecency with a child. Haley claims the 1980 court order wherein the trial court accepted
his plea of guilty and placed Haley on deferred adjudication was statutorily inadequate because the
order did not explicitly state the evidence substantiated a finding of guilt. We overrule this point of
error. 

 The trial court admitted evidence that on January 30, 1980, Haley pled guilty to a charge of
indecency with a child and was placed on deferred adjudication. Haley objected to the introduction
of the 1980 court order, claiming it lacked evidence substantiating his guilt. Article 42.12, Section
5(a) of the Texas Code of Criminal Procedure (the statute's language in 1980 was substantially the
same as the current version) allows a trial court to defer a finding of guilt "after receiving a plea of
guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's
guilt." Tex. Code Crim. Proc. Ann. art. 42.12, § 5(a) (Vernon Supp. 2008). The 1980 order states
Haley pled guilty; the trial court heard evidence; and was of "the opinion . . . . that the ends of justice
and the best interests of the public" and Haley would be served by deferring any adjudication of guilt. 
 A. Standard of Review

 We review a trial court's decision to admit or exclude evidence for an abuse of discretion. 
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); Saenz v. State, 843 S.W.2d 24, 26
(Tex. Crim. App. 1992). "As long as the trial court's evidentiary ruling is within the zone of
reasonable disagreement, an appellate court may not disturb it." Green v. State, 934 S.W.2d 92,
101-02 (Tex. Crim. App. 1996). 

 B. No Error in Admission of 1980 Order

 Haley makes the novel claim that this evidence is inadmissible because it does not meet the
requirement for deferred adjudication. But this is not an appeal alleging that a court improperly
entered a deferred adjudication finding. The issue is whether the evidence is admissible as
punishment evidence. At the punishment hearing, admissible evidence may not be only the prior
criminal record of the defendant, but any evidence relevant to sentencing. This includes evidence
of extraneous crimes or bad conduct that is shown beyond a reasonable doubt to have been
committed by the defendant. Tex. Code Crim. Proc. Ann. art. 37.07(3)(a)(1) (Vernon Supp. 2008). 
Here, the evidence included a 1979 written statement by Haley acknowledging in detail that he
committed the offense of indecency with a child. This evidence was introduced as a stipulation in
his 1980 hearing. Regardless of whether the 1980 judgment specifically states all the grounds
necessary for a deferred adjudication determination, the evidence was also admissible as an
extraneous crime or bad act which the jury could have found was shown beyond a reasonable doubt
to have been committed by Haley. (3)

 Even if it were necessary for us to find the deferred adjudication order was correctly entered,
we believe the evidence would support such a finding. The docket sheet states that on January 30,
1980, the date of the deferred adjudication order, "Def. entered plea of guilty. . . . Evidence presented
on guilt or innocence. Evidence considered sufficient to find Def. guilty." Article 42.12, Section
5(a) does not describe a precise predicate by which a trial court may place a defendant on deferred
adjudication. In this case, the findings required by the statute were all present in evidence presented
by the State. Between the order, the stipulation of evidence, and the comments on the docket sheet,
it is reasonable to conclude that the 1980 trial court found the evidence substantiated Haley's guilt. 
 There was no error in the trial court's admission of the 1980 deferred adjudication at Haley's
punishment proceeding. We overrule Haley's third point of error and affirm the trial court's
judgment.


 Jack Carter

 Justice


Date Submitted: July 31, 2009

Date Decided: August 13, 2009


Do Not Publish
1. K.G. first says Haley "offered K.G. a beer"; but later says he offered C.S. a beer; and C.S
testified she had "a sip" of beer. 
2. The hypothetically correct jury charge would require the State to prove Haley: (1) engaged
in sexual contact with the child or caused the child to engage in sexual contact (2) with intent to
arouse or gratify the sexual desire of any person. Tex. Penal Code Ann. § 21.11 (Vernon 2003). 
Sexual contact means the following acts, if committed with the intent to arouse or gratify the sexual
desire of any person: (1) any touching by a person, including touching through clothing, of the anus,
breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child,
including touching through clothing, with the anus, breast, or any part of the genitals of a person. 
Tex. Penal Code Ann. § 21.11(c). No argument is made that the jury charge is incorrect. 
3. "As amended in 1993, Article 37.07, Section 3(a) makes admissible, in addition to the
defendant's criminal record, 'any other evidence of an extraneous crime . . . that is shown beyond a
reasonable doubt by evidence to have been committed by the defendant . . . regardless of whether
he has previously been . . . finally convicted of the crime . . . .'" Davis v. State, 968 S.W.2d 368, 372
(Tex. Crim. App. 1998). "This is a clear expression of legislative intent that the fact-finder have,
in addition to judicial records, any other evidence of a defendant's crimes, regardless of whether the
defendant has been convicted. This language certainly includes other evidence of crimes to which
a defendant had pled guilty or nolo contendere and for which the defendant had received deferred
adjudication community supervision." Id.